Norman GREEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 69578.

Court of Criminal Appeals of Texas, En Banc.

Jan. 25, 1989.

**244**

Mark Stevens, Sid Harle, San Antonio, for appellant.

Fred G. Rodriguez, Dist. Atty. & Eduardo J. Garcia, Michael Granados & Raymond J. Hardy, Jr., Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DUNCAN, Judge.

The appellant was convicted of capital murder, V.T.C.A. Penal Code, § 19.03(a)(2). The jury then made affirmative findings to the special issues required by Art. 37.-071(b)(1) and (2), V.A.C.C.P., and accordingly punishment was assessed by the trial court at death. Appellant's cause is now before us on direct appeal pursuant to Art. 4.04, § 2, V.A.C.C.P. and Art. 37.071(h). Because of an error made during the voir dire it is necessary to reverse the appellant's conviction and remand the case to the trial court.

The appellant does not challenge the sufficiency of the evidence to support either his conviction or the affirmative findings on the special issues. And, further, because his appeal is disposed of on a point of error unrelated to the facts a comprehensive recitation of the facts is unnecessary. It is sufficient to note that this cause arose out of the shooting death of a sales clerk at a Dyer Electronics outlet in San Antonio. The record reveals that the appellant and a co-defendant set out to rob the sales clerk. During the robbery attempt, the sales clerk was shot several times and thereafter died of his wounds.

The appellant complains in his first point of error of the excusal of venireperson Ritz. He specifically argues that the trial court erred in *"sua sponte* excusing the venireperson Ritz in the absence of a showing that she was absolutely disqualified."

During the State's voir dire examination, venireperson Ritz indicated that although she was generally against the death penalty, there were circumstances in which she believed it to be proper. Arguably reluctant to inflict the death penalty, Ritz nonetheless maintained an ability to follow the law. The State explained the bifurcated trial procedure and the necessity of answering the two special issues. Art. 37.-071, V.A.C.C.P. In addition, the State, in a rather cursory fashion, then dealt with the need to distinguish intentional from deliberate. Following this discussion, Ritz once again reaffirmed her ability to answer the special issues and follow the law.

As her voir dire examination continued, Ritz agreed with defense counsel's characterization of her as one who was against the death penalty but could still apply the death penalty when given adequate proof in limited circumstances. Defense counsel also emphasized the importance of the two special issues. Specifically, defense counsel asked Ritz if she understood that just because someone was found guilty the question concerning deliberateness was not to be answered yes automatically. She stated that she understood.

On re-direct by the State, Ritz disclosed that she had previously been represented in a civil action by one of appellant's trial counsel. She also indicated that she would not be biased and could set this association aside.

On further examination by the State, Ritz repeated that she had reservations about the death penalty and could not sign a verdict as the jury foreman requiring death by lethal injection. At this point the State challenged her for cause. Defense counsel then set out to rehabilitate Ritz. Ultimately, Ritz agreed that she could follow the law and assess the death penalty if the special issues were properly proven.

The following colloquy on the State's re-direct examination then transpired:

Q. [By the State] If the facts were there, you could say, yes, that this person should die?

A. Yes, sir.

Q. And you could sign your name to the verdict?

A. Yes, sir.

Q. Does it make a difference to you that the death is by injection rather than some other method; is that your problem?

A. It's very hard for me to know they are going to kill him by injection, yes.

Q. Okay. Even though it's hard, you could do it?

A. If it was proven, yes.

MR. GRANADOS: No further questions.

MR. HARLE: Nothing further.

At this point, the trial judge intervened and the following transpired:

Q. [BY THE COURT]: Do you find a difference between intentional and deliberate?

A. Deliberately is that he already planned that, planned everything that he was going to do.

Q. Right.

A. So he was going to kill him.

Q. How is that different from intentional?

A. Intentional, well, it's almost the same thing.

Q. Intentional and deliberate to you is the same thing?

A. To me, yes, sir.

Q. And you wouldn't see any difference?

A. No. (Indicating).

Q. And if you have already found that he intentionally robbed a place and intentionally killed somebody, and then you come to question number one, because you have already found he intentionally killed somebody, intentionally robbed somebody, then you get to number one, you are going to answer that, yes?

A. Yes.

Q. You are going to answer it, yes?

Q. Yes.

Q. Automatically?

A. Yes, sir.

Q. Okay.

\* \* \* \* \* \*

THE COURT: I'm going to grant the State's Motion.

MR. HARLE: Your Honor, if I may, I would like—

THE COURT: You are out of time.

MR. HARLE: I won't attempt rehabilitation.

Defense counsel then immediately objected, correctly noting that the State's pending challenge for cause had been based solely on venireperson Ritz' inability to assess the death penalty. Defense counsel noted that Ritz had previously agreed not to answer the first issue automatically. Defense counsel then stated: "She's not going to automatically answer that question [Special Issue No. 1]. The Court went into that area and disqualified her himself."

In his comments to defense counsel the trial judge claimed that Ritz had previously told the prosecutor that she felt intentionally and deliberately were the same. Although the trial judge believed Ritz to have been rehabilitated as to her ability to assess the death penalty, he felt that defense counsel had "left her hanging on the question of intentional and deliberate." Consequently, the trial judge felt that he had the right to make further inquiry in the matter. According to the trial judge, since Ritz answered that there was no difference between intentional and deliberate; "I don't think she's qualified."

First, contrary to the trial judge's comment, the record is clear that Ritz never told the prosecutor that she thought intentional and deliberate were the same. Second, defense counsel had never left Ritz "hanging" on her ability to distinguish intentional from deliberate. Indeed, both the State and defense questioned her ability to do so and she responded that she would examine the matters independently. Therefore, the trial judge's inquiry was unnecessary.

The record also clearly indicates that the State's challenge for cause was based on Ritz' inability to assess the death penalty. After further questioning by the defense and the State, Ritz dispensed with that as a disputed issue by reaffirming her ability to follow the law and assess the death penalty if adequately proven. In his comments to defense counsel the trial judge conceded that Ritz had been rehabilitated on this ground. Thus, the State's pending challenge for cause on Ritz' inability to assess the death penalty was no longer viable.

■ Considering the State had never challenged Ritz for cause as to her ability to distinguish intentional conduct from deliberate conduct, the trial court's subsequent excusal of Ritz on this ground was unquestionably *sua sponte.*

■ The principles and standards of review associated with a trial court's *sua sponte* excusal of a prospective juror in a capital murder prosecution has been clearly detailed in a number of more or less recent opinions. *Nichols v. State,* 754 S.W.2d 185 (Tex.Cr.App.1988); *Bell v. State,* 724 S.W. 2d 780 (Tex.Cr.App.1986); *Goodman v. State,* 701 S.W.2d 850 (1985). In *Goodman v. State, id.,* the rule concerning the *sua sponte* excusal of a prospective juror was stated properly as follows:

It is well settled that a trial judge should not on its own motion excuse a prospective juror for cause unless the juror is absolutely disqualified from serving on a jury. [Citations omitted].

*Id.,* at 856. Thus, the primary factor that dictates the legal propriety of a *sua sponte* excusal is the inherent statutory qualifications of the venireperson.[1] For example, a prospective juror is *absolutely disqualified* from serving on a jury and must be excused from the panel according to Art. 35.19, V.A.C.C.P., if the prospective juror (1) has been convicted of theft or any felony, (2) is under indictment or other legal accusation for theft or any felony, (3) or is insane. Art. 35.16, V.A.C.C.P. See *Martinez v. State,* 621 S.W.2d 797 (Tex.Cr.App.

1981). Should a prospective juror be plagued with any such deficiency then the trial court has the authority to excuse the juror *sua sponte.*

■ If, however, the prospective juror is otherwise qualified to serve the trial court has no authority to *sua sponte* excuse the juror. Should a qualified juror, i.e., one that is not subject to either Art. 35.19, supra, or another proper challenge for cause, be excused *sua sponte,* error has occurred. In that instance, a defendant can show harm and thus reversible error by establishing that the State exhausted its peremptory challenges. *Bell v. State,* supra. The reason for this rule is "[i]f the trial court erroneously excludes a qualified juror, then the State has in effect received the benefit of an additional peremptory strike." *Goodman v. State,* supra.

■ The remaining type of juror is the *disqualified* juror. This is a prospective juror that is not absolutely disqualified under Art. 35.19, supra, but is subject to a challenge for cause. *Goodman v. State,* supra. Similar to the prohibition associated with the qualified juror, the trial judge does not have the authority to *sua sponte* excuse a disqualified juror. However, to show harm and thus reversible error "a showing that the State has used all its peremptory challenges will not suffice...." *Goodman v. State, id.,* at 856. If a disqualified prospective juror is *sua sponte* excused to show harm the defendant "must establish that he was tried by a jury to which he had a legitimate objection." *Id.*

■ Although both the State and the appellant base most of their arguments on the premise that Ritz was a qualified juror they are wrong. As previously noted, Ritz made it quite clear that she found no difference between "intentional" and "deliberate." She further stated consistently that she would therefore automatically answer special issue number one yes. The disqualifying nature of this type of response was

---

1. Although the cases predicate the authority of trial judges to *sua sponte* excuse jurors on the qualifications of the jurors under Art. 35.16, V.A.C.C.P., most fail to take into account the impact of Art. 35.03, V.A.C.C.P.

noted in *Gardner v. State*, 730 S.W.2d 675 (Tex.Cr.App.1987), when the Court clearly held that a prospective juror "[b]y indicating on cross voir dire that she would 'automatically' respond affirmatively to special issue one, ... had already proven herself susceptible to a challenge for cause...." *Id.*, at 689. This principle was followed in *Lane v. State*, 743 S.W.2d 617 (Tex.Cr.App. 1987) and *Morrow v. State*, 753 S.W.2d 372 (Tex.Cr.App.1988). Thus, when the trial judge *sua sponte* excused Ritz he improperly excused a *disqualified* juror. Consequently, in order to show harm it was incumbent upon the appellant to establish that he was tried by a jury to which he had a legitimate objection.

■ Although the predicate necessary to establish harm in this situation has been repeatedly stated, this Court has never explicated what constitutes in practical terms a legitimate objection to a jury. The expression "legitimate objection" necessarily involves both a subjective and objective analysis of the record. Initially it should be noted that merely making the claim is insufficient because without some factual reference it would be impossible to determine the legitimacy of the complaint. Thus, the simple assertion that one was tried by a jury to which he had a legitimate objection is insufficient to establish harm.

Accordingly, the appellant's complaint about the jury must have a basis in the record. In addition, the appellant's complaint should be directed to a specific juror or jurors. The criticism will invariably relate to the juror's characteristics and attitudes that are inconsistent with a defendant's objectives in a case but which would not support a challenge for cause but nevertheless distinguish the juror or jurors from other members of the panel.

■ In a similar situation, if an appellant's challenge for cause is improperly denied the defendant can show harm only if he proves that he exhausted all of his peremptory challenges and requested additional peremptory challenges which the court denied. *Mathis v. State*, 576 S.W.2d 835 (Tex.Cr.App.1979). The fundamental basis of this rule recognizes that without exhausting his peremptory challenges it is impossible to conclude that the defendant had to accept an objectionable juror.

■ This observation is equally applicable to the *sua sponte* excusal of a disqualified juror and the necessity of a defendant showing he was tried by a jury to which he had a legitimate objection. Accordingly, as a preliminary consideration, before a defendant's objection is accorded any legitimacy the record must reflect that the defendant exhausted his peremptory challenges and requested additional challenges.

■ In summary, if a disqualified prospective juror is *sua sponte* excused in order to preserve error and establish harm a defendant must:

(1) object to the excusal of the juror;
(2) at the conclusion of the voir dire claim that he is to be tried by a jury to which he has a legitimate objection;
(3) specifically identify the juror or jurors that he is complaining;
(4) exhaust all of his peremptory challenges and request additional peremptory challenges.[2]

■ In the present case, the record reflects that unlike the procedure envisioned by Art. 35.17(2), V.A.C.C.P., pursuant to the appellant's request, before either the appellant or the State exercised any of their peremptory challenges the venire was individually examined. This procedure continued until a pool of over forty-two quali-

---

**2.** In *Nichols v. State,* supra, the Court stated: "To exhibit a legitimate objection to the jury, appellant would have to make some showing he was either forced to exercise a peremptory strike in order to prevent a disqualified juror from sitting or that he was forced to accept an objectionable juror in the prospective juror's place." *Id.,* at 194. The first portion of the quotation is incorrect because being "forced to exercise a peremptory challenge ...," *id.,* presupposes the existence of an appropriate challenge for cause that was improperly overruled and this would implicate an entirely different form of error. *Sharp v. State,* 707 S.W.2d 611 (Tex.Cr.App.1986). Thus, the first contingency as identified in the above quotation from *Nichols v. State, id.,* is overruled.

fied jurors was achieved.[3] Thereafter, the State and the appellant exercised their respective peremptory challenges pursuant to Art. 35.13, V.A.C.C.P. The State and the appellant had each exercised all fifteen peremptory challenges by the time ten of the twelve members of the jury had been chosen. At this time, appellant's counsel again objected to several aspects of the voir dire proceedings, specifically noting the *sua sponte* excusal of venireperson Ritz. In addition, appellant's counsel requested additional peremptory challenges which was denied. Appellant's counsel then specifically and correctly recalled the voir dire examination of Ritz and pointed out that "[t]he Court at that point took it upon itself to disqualify [excuse] the juror based upon items that the State had not challenged on and things that were outside the scope of the State's challenge which in fact had not been renewed." Further, the appellant's attorney commented that "[w]e object to the Court excusing a defendant's juror who was qualified under Adams [Adams v. Texas, 448 U.S. 38 (1980)] *sua sponte* and excusing her and depriving the defendant of the benefit of her presence on the jury or the benefit of having the State being forced to use a pre-emptory [sic] challenge in that regard." In response, the trial court denied the objection.

Then, the appellant's attorney specifically claimed he would be forced to accept on the jury some objectionable jurors. According to the appellant,

The first objectionable juror, Linda Deloach, was alleged to be objectionable because she had heard of the killing, had expressed some problems with sitting on the jury due to her job and out of town visits and because she had expressed a bias towards the appellant. The second juror, Genaro Esperza, was said to be objectionable because he had served in the Army, believed in the death penalty, had been questioned by the State regarding an administrative penalty for theft received in the Army and finally, the juror demonstrated a bias towards the appellant.

Appellant's counsel further specifically identified and objected to two other jurors, Mr. Goodwin and Ms. Silva, and emphasized that he would have exercised peremptory challenges on them if he had any left.

Comparing the appellant's expressed criticism to the examination of the individual jurors, we conclude that there is a basis in the record to his complaints. For example, relative to Ms. Silva, during the appellant's voir dire examination she stated that she would prefer that a defendant testify but would not require him to do so. Concerning the impact of the indictment, Ms. Silva stated: "Well, he must have done something for them to bring him here." In addition, Ms. Silva conceded that she had an uncle that was a deputy sheriff. The record reflects that Ms. Silva was properly and adequately rehabilitated on the matter concerning the indictment. Also, her answer to the questions about a defendant testifying and her having a relative in law enforcement were certainly not sufficient to constitute a proper challenge for cause. At the same time, however, we concur with the appellant that Ms. Silva would have been a prospective juror that one would understandably and reasonably have exercised a peremptory challenge upon.

Although we do not necessarily agree with the appellant entirely with his observations about the named jurors we do conclude that his objection to the jury as a whole was legitimate because he did specifically identify the objectionable jurors and there is a basis in the record for his complaints.

Thus, under the criteria for establishing harm, the appellant has properly shown that he was "tried by a jury to which he had a legitimate objection." *Goodman v. State, supra.*

Accordingly, the appellant's conviction is reversed and the cause remanded.

McCORMICK, P.J., and CLINTON and CAMPBELL, JJ., concur in result.

---

3. It is impossible to determine exactly how many prospective jurors comprised this group because the strike lists were not made a part of the record.

DAVIS and WHITE, JJ., dissent.

BERCHELMANN, J., not participating.