Affirmed and Memorandum Opinion filed April 10, 2003









Affirmed and Memorandum Opinion filed April 10, 2003.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00273-CR

____________

 

JOHN EMERY a/k/a CHRIS BLAKE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 902,661

 



 

M E M O R A N D U M   O
P I N I O N

A jury found appellant guilty of the felony offense of
possession with intent to deliver more than four and less than two hundred
grams of cocaine.  See Tex. Health & Safety Code Ann. ' 481.112(d) (Vernon Supp. 2003).  Appellant pleaded true to two prior felony
convictions, and the jury assessed punishment at 45 years= confinement in the Texas Department
of Criminal Justice, Institutional Division. 
We affirm.








DISCUSSION

Appellant raises four points of error.  In points of error one, two and three, he
challenges the trial court=s excusing three veniremembers.  In point of error four, he challenges the
trial court=s having given a reasonable doubt
instruction in the jury charge.  The
facts of the underlying offense are not relevant to the points of error, and we
set forth the relevant procedural facts under the discussion of the respective
points of error.

Points of Error One through Three: Excuse of Three
Veniremembers

Veniremembers Stark and Lutchman.  In points of error one and two, appellant
contends the trial court erred in sua sponte striking veniremembers Stark and
Lutchman. During voir dire, both veniremembers stated they could not impose the
minimum penalty, and therefore were subject to challenges for cause.  See Johnson v. State, 982 S.W.2d 403,
406 (Tex. Crim. App. 1998) (stating in criminal trials, both defendant and
State have right to have jurors who believe in full range of punishment).  Nevertheless, a trial court should not sua
sponte excuse a prospective juror for cause unless the juror is absolutely
disqualified from service.  Green v.
State, 764 S.W.2d 242, 246 (Tex. Crim. App. 1989).

In order to preserve error and establish harm when a juror
subject to challenge for cause is sua sponte excused, a defendant must (1)
object to the juror=s having been excused; (2) at the conclusion of the voir
dire, claim he is to be tried by a jury to which he has a legitimate objection;
(3) specifically identify the excused juror or jurors about which he is
complaining; (4) exhaust all his peremptory challenges and request additional
peremptory challenges.  Warren v.
State, 768 S.W.2d 300, 303 (Tex. Crim. App. 1989); Green, 764 S.W.2d
at 247.  In the present case, the record
is devoid of any indication appellant objected to the court=s excusing veniremembers Stark and
Lutchman.  Appellant has not preserved
error and established harm with regard to the striking of these veniremembers.

We overrule appellant=s points of error one and two.








Veniremember Infante. 
In point of error three, appellant complains of the striking of
veniremember Infante.  Appellant concedes
the State challenged veniremember Infante for cause.  Appellant subsequently requested a peremptory
challenge based specifically on the strike of veniremember Infante.  Appellant stated he had used all his
peremptory strikes and identified a single veniremember, number 12, as
objectionable.[1]  The trial court denied appellant=s request, and juror number 12 was
empaneled.

The following exchanges occurred during voir dire of
veniremember Infante initially on the question of whether she could vote to
convict even though she knew the minimum sentence would be 25 years, and later
on the question of whether she could consider life in prison as a punishment:

JUROR INFANTE:  I think I=m going
to be having a hard time.

 

MR. WEISSFISCH
[Prosecutor]:  You say you=re going to have a hard time deciding if he=s guilty.  Not
if I do my job, you won=t have a hard time. 
Why do you say that?

 

JUROR INFANTE:    Actually, being so nervous since this morning,
so -- I can=t be a good juror.

 

MR.
WEISSFISCH:  Okay.  You don=t think
you can be a good juror?

 

JUROR INFANTE:  I=m not
sure I would be deciding or, you know, not.

 

MR. WEISSFISCH:  Okay. 
Why do you feel that way?

 

JUROR INFANTE:    I don=t know.

 

MR.
WEISSFISCH:  And let me ask you this: Do
you have some type of moral or religious reason where you feel like you can=t sit in judgment of somebody else?

 








JUROR INFANTE:  No, but -- I don=t know, it=s -- I=m not comfortable.

 

MR. WEISSFISCH: 
Okay.  Do you think that because
of the possibility of a 25-year sentence, not knowing what this -- not knowing
-- you=ll know, of course, how many grams of drugs it
is.  Everybody keep that in mind.  That comes out in the guilt or innocence
phase, you=ll know whether it=s 4, or
10, or whatever.

 

But, not knowing what his priors are, do you think
that would keep you from returning a guilty verdict even if you thought he did
it?

 

JUROR INFANTE: 
I=m not so sure.

 

MR. WEISSFISCH: 
Well, I need a kind of yes or no. 
Do you think it would keep you from returning a guilty verdict or not?

 

JUROR INFANTE: 
No, I don=t know.

 

MR. WEISSFISCH: 
You don=t know?

 

JUROR INFANTE: 
No.

                                                                . . .

 

MR. WEISSFISCH: . . . Marquez.  Mr. Marquez, all right.  And the next row?  Anybody cannot consider the maximum?  Ms. Infante, can you consider the
maximum?  Can you consider giving him
life in prison?

 

JUROR INFANTE: 
I don=t know.

 

MR. WEISSFISCH: 
You don=t know?

 

JUROR INFANTE: 
No, sir.

 

MR. WEISSFISCH: 
Well, if you had to pick one, if you had to say yes or no, which would
you say?

 

JUROR INFANTE: 
Maybe no.

 

MR. WEISSFISCH: 
Well, don=t tell me maybe. 
Tell me “yes” or tell me “no.”








 

JUROR INFANTE: 
No.

                                                                . . .

 

THE COURT: 
Juror 37, Ms. Infante.

 

MR. WEISSFISCH: 
Ms. Infante, when I had talked to you in voir dire I asked you if you
could consider giving somebody life in prison for possession of a controlled
substance and you said you could not; is that right?

 

JUROR INFANTE: 
First, I said I’m not sure because I don=t know.

 

MR. WEISSFISCH: 
And then you said you could not?

 

JUROR INFANTE: 
Yes, probably.

 

MR. WEISSFISCH: 
Well, out there you said you could not. 
Now, the question is: Can you consider life in prison?  And if you can=t, that=s fine; but we just need to know.

 

JUROR INFANTE: 
Yes, sir.

 

THE COURT:  Can
you consider life in prisonClet=s say you find out that the person has prior
convictions and let=s say they=re
terrible.  Let=s say that he went to jail for murder, he=s out of the pen and now he=s possessing some drugs.  Can you consider sending him to the
penitentiary for the rest of his life?

 

JUROR INFANTE: 
Actually, I don=t know.  I
cannot decide because just being here, I=m
already feeling nervous.  And I can=t -- I don=t know
what to say, I can=t decide.  I don=t know, I think it=s going
to be --

 

THE COURT:  We=ve talked to a number of people who have said “I would
not consider life in prison under any circumstances, never.  I would never consider it.  I don=t care
what the case is about, I don=t care what his background is, I would never consider
it under any circumstances.”  Is that how
you feel?

 

JUROR INFANTE: 
No, I cannot give a fair judgment, that=s what I
feel.

 








THE COURT:  Why
not?

 

JUROR INFANTE: 
That=s what I feel. 
I think I=m not so, I=m not so
-- I can=t handle this.

  

THE COURT:  You
can=t handle this?

 

JUROR INFANTE: 
No, sorry.  It=s a serious matter, that=s why I
want to give it to a person that can handle it; but not me.  I can’t handle this.

 

THE COURT:  So
could you make me a promise to render a verdict in this case or could you not
make that promise?

 

JUROR INFANTE: 
No, I=m not sure, sir.

 

THE COURT:  You’re
not sure you could make that promise?

 

JUROR INFANTE: 
No.

 

THE COURT: 
Okay.  You can be seated.

 

MR. WEISSFISCH: 
37?

 

MR. ONCKEN [Defense Counsel]:  You=re
excusing 37?  I=m going to object to that, Judge.  I don=t
believe she stated any basis on the record for your excusing her, so I think it=s an improper --

 

MR. WEISSFISCH: 
State moves to strike No. 37 for cause, she said she cannot be fair.

 

During the preceding exchanges,
veniremember Infante at one point stated she did not know whether she could
return a guilty verdict in light of the possibility appellant might face a
minimum 25-year sentence.  At another
point, she stated she could not consider giving appellant life in prison (the
permissible maximum), then subsequently stated she was not sure because she did
not know.  At yet another point, she
said, “I cannot give a fair judgment, that=s what I feel.”  








The trial court has discretion in
ruling on challenges for cause, and an appellate court will not upset its
rulings absent an abuse of that discretion. 
Ladd v. State, 3 S.W.3d 547, 559 (Tex. Crim. App. 1999).  Any veniremember unable to consider the
maximum penalty allowed by law for all legally eligible candidates is biased or
prejudiced against that law and, therefore, subject to challenge for
cause.  See Fuller v. State, 829
S.W.2d 191, 200 (Tex. Crim. App. 1992) (stating same in context of death
penalty case), overruled on other grounds by Castillo v. State, 913
S.W.2d 529 (Tex. Crim. App. 1995).  When
a veniremember either vacillates or equivocates on her ability to follow the
law, an appellate court defers to the trial court=s judgment on the challenge for
cause.  Granados v. State, 85
S.W.3d 217, 231 (Tex. Crim. App. 2002), cert. denied ___ U.S. ___, 2003
WL 1448204 (Mar. 24, 2003) (No. 02-8470).

Given veniremember Infante’s
equivocation on whether she could follow the law, we cannot conclude the trial
court abused its discretion in striking veniremember Infante for cause.  We overrule appellant=s point of error three.

Point of Error Four: Instruction on
Reasonable Doubt

In point of error four, appellant
contends the trial court erred in giving a reasonable doubt instruction, to
which neither party objected.  Appellant
specifically points to the following definitional component of the jury charge:
“A ‘reasonable doubt’ is a doubt based on reason and common sense after a
careful and impartial consideration of all the evidence in the case.”








This language is a portion of the
definition of reasonable doubt adopted in Geesa to be submitted to the
jury in all criminal cases.  Geesa v.
State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991),  overruled by Paulson v. State, 28
S.W.3d 570 (Tex. Crim. App. 2000).[2]  At one time, failure to submit this
instruction was automatic reversible error. 
Reyes v. State, 938 S.W.2d 718, 721 (Tex. Crim. App. 1996), overruled
by Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000).  In Paulson v. State, however, the
court overruled  Reyes and Geesa
to the extent those cases required a jury instruction defining reasonable
doubt.  28 S.W.3d 570, 573 (Tex.
Crim. App. 2000).[3]  The court concluded the better practice was
to have no definition of reasonable doubt given to the jury, although if both
parties agreed to such an instruction there would be no reversible error for
the trial court to allow it.  Id.








Courts of appeals are divided about
whether Paulson prohibits the inclusion of a reasonable doubt definition
in a jury charge.  The following courts
have held giving the instruction was error: 
Rodriguez v. State, 96 S.W.3d 398, 405B06 (Tex. App.CAustin 2002, pet. ref’d) (concluding
that instruction should not have been given over objection, but error
harmless); Phillips v. State, 72 S.W.3d 719, 721 (Tex. App.CWaco 2002, no pet.) (holding there
was error due to absence of agreement, but finding error harmless); Colbert
v. State, 56 S.W.3d 857, 860 (Tex. App.CCorpus Christi 2001, pet. granted)
(holding if there is no agreement, then there is reversible error). The
following courts have held giving the instruction was not error:  Carriere v. State, 84 S.W.3d 753, 759B60 (Tex. App.CHouston [1st Dist.] 2002, pet. filed)
(holding the instruction given, distinguishing reasonable doubt from possible
doubt, was not the sort prohibited by Paulson, therefore, no error
occurred); Vosberg v. State, 80 S.W.3d 320, 323 (Tex. App.CFort Worth 2002, pet. filed) (holding
no error to give charge which distinguished reasonable doubt from possible
doubt); Brown v. State, 91 S.W.3d 353, 358B59 (Tex. App.CEastland Aug. 2002, no pet.) (holding
no error to include definition and noting there was no objection to same); Dooley
v. State, 65 S.W.3d 840, 844 (Tex. App.CDallas 2002, pet. ref=d) (concluding that giving a
reasonable doubt instruction does not compel conclusion jury=s verdict erroneous as a matter of
law).

Nevertheless, we need not decide
whether the trial court erred in giving the instruction in the present case.  Neither party objected to the reasonable
doubt definition in the court’s charge. 
If an appellant does not properly object at trial to an error in the
jury charge, he must claim the error was fundamental.  Almaza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985).  To obtain a
reversal, he must show (1) an error occurred, and (2) the error was so
egregious as to require a reversal.  Id.
 Appellant has not established
egregious harm with regard to any possible error.  In fact, during voir dire, appellant=s trial counsel gave the same
definition to which he now objects:

THE COURT: I=m going
to give you all a legal definition of beyond a reasonable doubt and you=ll have to follow the wording of a reasonable doubt.
You may proceed.

MR. ONCKEN [trial counsel]: Let=s see if [I] can remember what that definition is:
Reasonable doubt is a doubt based on reason --

MR. WEISSFISCH [for the state]: Judge, I object. That=s not even the current definition of beyond a
reasonable doubt. 

THE COURT: Overruled.

MR. ONCKEN: Well, the Judge just said he=s going to give it to you.  If he says he=s going
to give it to you and if he=s [sic] says he=s the
referee in this case, he=s the man. 
Okay.

A reasonable doubt is a doubt based upon reason after
a careful and impartial consideration of all the evidence.  It=s the
kind of doubt that causes you to hesitate in the most important of your own
affairs.  Cause you to hesitate -- do you
remember that charge when you were a juror? 
Cause you to hesitate in the most important of your own affairs.  And if you have that kind of feeling about
the State=s case, then you have to find the man not guilty.  And this Judge said that he=s going to instruct you on that.  Okay.

 








Based on the record before us, we
cannot conclude that appellant has suffered egregious harm.  Accordingly, we overrule appellant=s fourth point of error.

We affirm the judgment of the trial
court.

 

 

/s/        John
S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed April 10, 2003.

Panel consists of Justices Anderson,
Fowler, and Frost.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  The fact
appellant requested only one additional peremptory strike reinforces our
conclusion he has not preserved error or established harm with regard to the
strikes of veniremembers Stark and Lutchman.





[2]  The entire Geesa
definition was as follows: 

 

A Areasonable doubt@ is a
doubt based on reason and common sense after a careful and impartial
consideration of all the evidence in the case. It is the kind of doubt that
would make a reasonable person hesitate to act in the most important of his own
affairs.

Proof beyond a reasonable doubt, therefore must be
proof of such a convincing character that you would be willing to rely and act
upon it without hesitation in the most important of your own affairs.

 

Geesa v. State,
820 S.W.2d 154, 162 (Tex. Crim. App. 1991), overruled by Paulson v. State,
28 S.W.3d 570 (Tex. Crim. App. 2000).





[3]  In Paulson,
the court explained that the Geesa instruction contains three different
definitions for reasonable doubt.  Paulson
v. State, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000).  Appellant
complains that the inclusion of a portion of the Geesa instruction
produced an unreliable result.  The court
of criminal appeals, however, called the objected-to portion of the reasonable
doubt definition Auseless,@
like saying A[a] white horse
is a horse because it is white.@  Id.