

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 02-15-00339-CR**
**NO. 02-15-00340-CR**
**NO. 02-15-00341-CR**
**NO. 02-15-00342-CR**
**NO. 02-15-00343-CR**
**NO. 02-15-00344-CR**
**NO. 02-15-00345-CR**
**NO. 02-15-00346-CR**
**NO. 02-15-00347-CR**
**NO. 02-15-00348-CR**
**NO. 02-15-00349-CR**
**NO. 02-15-00350-CR**

SPERGEL POLK                                                      APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1381679D, 1381897D, 1383123D, 1383798D, 1383807D,
1383808D, 1383939D, 1383942D, 1384529D, 1386027D, 1386030D, 1387106D

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

In one issue, Appellant Spergel Polk appeals the denial of his motions to suppress. We affirm.

## Background

Appellant was indicted for seven cases of robbery and five cases of aggravated robbery.[2] *See* Tex. Penal Code Ann. §§ 29.02, 29.03 (West 2011). Appellant filed motions in each of the cases seeking to suppress oral statements that he made to police on August 17, 2014, on the basis that his statements were involuntary due to sleep deprivation and the influence of drugs.

Detective Edward Raynsford, the on-call detective who interviewed Appellant at approximately 3:20 a.m.[3] on August 17, 2014, testified at the hearing on the motions to suppress. According to Detective Raynsford, he provided Appellant a Miranda warning sheet,[4] went through each individual warning contained therein, and asked Appellant if he understood each warning. Both Detective Raynsford and the videotape of the interview confirmed Appellant's

---

[2]Cause No. 1383123D was originally for robbery but was subsequently elevated to aggravated robbery by the State with the addition of a deadly weapon allegation.

[3]A video of the interview was admitted into evidence.

[4]The form is called a Miranda form because it contains the warnings commonly known as *Miranda* warnings that are derived from *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). *See also* Tex. Code Crim. Proc. Ann. art. 38.22 § 2(a) (West Supp. 2015) (requiring that an accused receive warnings such as those provided for in *Miranda*).

2

acknowledgement that he understood each individual warning and that Appellant

subsequently read the following paragraph aloud:

> **I HAVE READ AND UNDERSTAND MY LEGAL RIGHTS AS STATED ABOVE ON THIS DOCUMENT. I FREELY, VOLUNTARILY AND KNOWINGLY WAIVE THESE LEGAL RIGHTS AND AGREE TO BE INTERVIEWED BY POLICE.[5]**

After a short exchange between Appellant and Detective Raynsford, Appellant

signed the warning.[6]

After Appellant signed the Miranda form, he revealed to Detective

Raynsford that he had recently used narcotics[7] and that he had been awake for

two days with only a few hours of sleep prior to his arrest. He then proceeded to

make the first in a series of confessions.

Appellant began by confessing to committing a robbery in a "phone place"

the day before his arrest. In this confession, Appellant included details such as

what he was wearing at the time, where the store was located, who drove him to

the store, and the manner in which he committed the crime.[8] Throughout the

remainder of the interview, he admitted to committing robberies in at least eleven

---

[5]The Miranda warning form was admitted into evidence at the hearing.

[6]The videotape showed that immediately after Appellant read the final warning from the sheet, Detective Raynsford asked him, "You understand what all that means?" to which Appellant replied, "Yes [inaudible] whatever you want to know, I'm willing to talk to you about."

[7]Appellant specifically mentioned "crack" and marijuana.

[8]He told Detective Raynsford that he went into the store and handed a female employee a note demanding money.

other businesses and provided details relating to each event. Specifically, Appellant recounted committing robberies at two Little Caesars restaurants,[9] a Jack-in-the-Box restaurant,[10] a Metro PCS phone store,[11] two Subway restaurants,[12] a Church's Chicken restaurant,[13] a CVS pharmacy, a Dollar General store,[14] a Pizza Hut restaurant,[15] and a Wendy's restaurant. In all, he estimated that he had committed fifteen robberies.

---

[9]Appellant described handing a note to an employee of the Little Caesars that said, "This is a robbery. Give me the money and nobody gets hurt." When Detective Raynsford showed a photo to Appellant, Appellant identified the person in the photo as the Little Caesars employee to whom he gave the note. Appellant also described stealing the cash register off of the counter at one of the Little Caesars and throwing it away on a side street.

[10]Appellant told Detective Raynsford that his friend drove him to the restaurant, and he described where the car was parked during the commission of the crime. Consistent with the other robberies, Appellant said he gave a note to an employee demanding money.

[11]Appellant described handing a note to a young Hispanic male employee and collecting $500 from the store.

[12]Appellant described giving a note to a Subway employee during the first robbery, but then leaving the store because there were too many customers inside. With regard to the second Subway robbery, Appellant recalled ordering a sandwich before handing a note to the cashier demanding money.

[13]Appellant described taking a blue "money bag" from a black female employee at this restaurant.

[14]Appellant recalled that at this store he told a female employee to give him the money out of the cash register but she responded that she could not open it without a key.

[15]Appellant described getting a ride to the store from a friend, parking nearby, going into the restaurant, giving the cashier a note, and leaving with money.

Detective Raynsford testified that during these confessions, Appellant appeared to be lucid and coherent, was able to converse with him and understand the conversation they were having, did not have any problem in following the detective's directions, provided information such as his name and date of birth, and, on occasion, even corrected Detective Raynsford as to certain facts.[16] Detective Raynsford added that at no point during the interview did he experience reservation about Appellant's ability to answer his questions. While Detective Raynsford acknowledged on cross-examination that Appellant periodically sniffed his nose, rubbed his face, shifted his body weight from side to side, and yawned during the interview, Detective Raynsford also testified that based on his experience with individuals who had recently ingested narcotics, in his opinion Appellant exhibited no signs consistent with recent ingestion of narcotics, nor did Appellant show signs consistent with coming off of a high from narcotics.

Appellant, however, testified that on the day before his arrest he had purchased crack cocaine and Xanax[17] and had taken the drugs to get high. Appellant explained that when he smoked crack cocaine, he would initially experience a feeling of euphoria—his heart would race and he would feel like he

---

[16]During this almost two-hour process, Detective Raynsford supplied Appellant with a cup of water, two bags of chips, and a soft drink because Appellant said he was hungry.

[17]Xanax is a prescription drug that is generally used to treat depression.

5

"had no problems, didn't worry about anything"—but that as the effects of the drug wore off, he would start feeling paranoid. He testified that when that happened, he took a couple of "bars" of Xanax to "take the edge off." According to Appellant, by the time of his arrest, he had been awake and under the effects of crack cocaine for almost two days. Describing himself as "f***ed up" and groggy from taking Xanax after smoking the crack cocaine, Appellant testified that he had slept for "maybe four" hours before his arrest. Ordinarily, Appellant would sleep for eight to nine hours after coming down from one of these two or three-day stretches without sleep.

Appellant testified that because he was still under the influence of drugs when he began his interview with Detective Raynsford, he did not appreciate the seriousness of the situation. He pointed out that with regard to his prior convictions for burglary and robbery, he had not made a confession in any of those cases. And he claimed that he would not have made a confession in this circumstance either, had he not been sleep-deprived and under the influence of Xanax at the time.[18]

The trial court took the motions to suppress under advisement, but at a later hearing announced its decision to deny the motions, stating as follows:

---

[18]On cross-examination, Appellant admitted that he was experienced with the ingestion of narcotics and that, on occasion, he has functioned and operated in his daily life—walking around, riding in vehicles, and going to stores—while under the influence of narcotics.

6

THE COURT: All right. In regard to the motion to suppress, the Court will find that Detective Raynsford of the Fort Worth Police Department interviewed the defendant on August 17th of 2014. It began at approximately 3:20 in the morning. The defendant was lucid and coherent. He exhibited no signs of drug usage to Detective Raynsford.

The detective gave the defendant his warnings before—at the beginning of the statement. The defendant signed acknowledgment that he has received the warnings, which is in State's Exhibit Number 1. Even though he stated that he, he being the defendant, had used some narcotics and there were narcotics found in the hotel room, the Court finds from a totality of the testimony that after being given his warnings that the appellant—that the defendant intelligently, knowingly, and voluntarily waived that—waived those rights. He was not threatened, coerced or promised anything for his statement.

The officer was—who testified was credible. He was legally arrested pursuant to some warrants and that his—his statement was given voluntarily.

So the Court will deny the defendant's motion to suppress.

Appellant subsequently pleaded guilty to each offense and true to the habitual offender paragraph. The trial court sentenced him to 28 years' confinement for each offense.

## Discussion

Appellant argues that the trial court erred in denying his motion to suppress his oral statement because he was mentally incapable of waiving his *Miranda* rights due to sleep deprivation and the influence of drugs.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

7

We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

"A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion[.]" Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). Article 38.22, section 2(b) of the code of criminal procedure specifies that no statement made by an accused as a result of a custodial interrogation is admissible against the accused unless "the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning" prescribed by section 2(a). *Id.* art. 38.22 § 2(b). We examine the totality of the circumstances surrounding the acquisition of such a statement in determining whether a confession is voluntary. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977, 116 S. Ct. 480 (1995); *Franks v. State*, 90 S.W.3d 771, 784 (Tex. App.—Fort Worth 2002, no pet.); *Reed v. State*, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd).

An inquiry into the waiver of Miranda rights has two distinct dimensions. First, the waiver must be voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Colorado*

8

*v. Spring*, 479 U.S. 564, 573, 107 S. Ct. 851, 857 (1987) (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986)); *Ripkowski v. State*, 61 S.W.3d 378, 384 (Tex. Crim. App. 2001), *cert. denied*, 539 U.S. 916, 123 S. Ct. 2274 (2003). Second, the waiver must be made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Spring*, 479 U.S. at 573, 107 S. Ct. at 857; *Ripkowski*, 61 S.W.3d at 384.

Appellant does not allege that he was intimidated, coerced, or deceived into giving his statement, and he does not dispute that he was given and signed the Miranda form. He argues instead that he was mentally incapable of waiving his rights because of intoxication and sleep deprivation. Whether Appellant was unable to understand the consequences of his waiver due to drug use and sleep deprivation presents a mixed question of law and fact. *See Franks*, 90 S.W.3d at 784. We review the record applying an abuse of discretion standard of review because the resolution of this issue involved the evaluation of the credibility and demeanor of the witnesses. *Id.* (citing *Guzman*, 955 S.W.2d at 89).

Texas caselaw establishes that neither intoxication nor sleep deprivation by itself is enough to warrant suppression of a confession. *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996) ("Intoxication, while relevant, does not render a confession involuntary *per se*."), *cert. denied*, 522 U.S. 832, 118 S. Ct. 100 (1997); *Barney v. State*, 698 S.W.2d 114, 121 (Tex. Crim. App. 1985) (noting that lack of sleep for sixteen hours would not alone render appellant's confession

9

involuntary). Rather, the issue is whether intoxication or fatigue rendered an accused incapable of making an independent, informed decision to confess. *Jones*, 944 S.W.2d at 651 (citing *Nichols v. State*, 754 S.W.2d 185, 190 (Tex. Crim. App. 1988)*, overruled on other grounds by Green v. State*, 764 S.W.2d 242, 246 (Tex. Crim. App. 1989)).

The court of criminal appeals has upheld trial courts' findings of a voluntary statement based upon police officers' testimony that the defendant did not appear intoxicated and appeared to be in control of his faculties. *See, e.g.*, *Leza v. State*, 351 S.W.3d 344, 352–53 (Tex. Crim. App. 2011); *Nichols*, 754 S.W.2d at 190. In *Leza*, the court of criminal appeals held that a waiver of article 38.22 rights was not involuntary due to the accused's heroin intoxication, noting that the officer who read the accused his rights and conducted the bulk of the interrogation testified that he did not seem to be intoxicated and that his ongoing cooperation in the interrogation appeared to be wholly voluntary. 351 S.W.3d at 352–53. The court also noted that "[t]he trial judge reviewed the recording of the interrogation and could measure the officer's perceptions with respect to the voluntariness of the appellant's waiver for himself." *Id.*[19]

_____

[19]Even where arresting officers admit that a defendant "appeared very tired" or that the defendant appeared to be under the influence of drugs or alcohol, courts—including this one—have nevertheless held that the defendant's waiver of rights was voluntary. *See, e.g.*, *Torres v. State*, Nos. 14-15-00155-CR, 14-15-00156-CR, 14-15-00157-CR, 14-15-00158-CR, 2015 WL 9241453, at *3 (Tex. App.—Houston Dec. 15, 2015, pet. ref'd) (holding consent to search was not involuntary even though officers testified that appellant "kept falling asleep while he was standing up" and that "it was more than just a normal sleepy," but

Here, Detective Raynsford testified that Appellant appeared lucid and coherent and did not have trouble following their conversation. In Detective Raynsford's opinion, Appellant did not exhibit any signs of someone who had either recently ingested or was coming off the effects of narcotics. And the trial court—the  exclusive judge of the credibility of the witnesses and the weight to be given their testimony—found Detective Raynsford to be credible. *See Powell*, 636 S.W.2d at 865.

Additionally, the video of the interview was admitted into evidence and reviewed by the trial court.[20] After reviewing this evidence, including the Appellant's testimony, the trial court found that Appellant appeared to be lucid and coherent. Giving proper deference to the trial court's rulings, which in this case were based on an evaluation of credibility and demeanor, we hold that the evidence supports the trial court's finding that Appellant knowingly, intelligently, and voluntarily waived his rights.

---

appellant "definitely" appeared to understand officer's questions and consented to search of vehicle three separate times); *Powell v. State*, 636 S.W.2d 863, 865 (Tex. App.—Fort Worth 1982, no pet.) (holding that confession was voluntary where state's witness testified that appellant was intoxicated but made sense and another witness testified that although appellant's speech was slurred, his language was understandable).

[20]As recited above, the videotape shows Detective Raynsford reading each of the warnings on the Miranda form to Appellant and asking him if he understood each warning. It also shows Appellant answering that he did understand and then reading aloud the paragraph that clearly states he was "freely, voluntarily and knowingly" waiving his rights by signing the form. At the hearing, Appellant testified that he remembered reading these warnings and signing the Miranda form prior to confessing to the robberies.

We therefore hold that the trial court did not abuse its discretion in denying Appellant's motions to suppress, and we overrule Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 12, 2016