NO.
12-05-00142-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

RAUL TAMEZ,         §          APPEAL
FROM THE THIRD

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          ANDERSON COUNTY, TEXAS

                                                                                                                                                       


OPINION

            Raul Tamez
appeals his conviction for the offense of murder.  Appellant raises nine issues for our
consideration.  We affirm.

 

Background

            William
Cathey and Appellant were both inmates at the Coffield Unit of the Texas
Department of Criminal Justice. 
Appellant had been convicted of burglary and, once imprisoned, had been
convicted of possession of a deadly weapon within a penal facility.  Cathey had been convicted of murder.  The two men were housed in single occupancy
cells in a maximum security portion of the prison.  On October 7, 2002, both men were allowed
recreation.  They were taken separately
to adjoining recreation rooms.  After
about ten minutes, Appellant told the guard that he needed to use the
restroom.  This meant that he would be
escorted back to his cell and would forfeit the remainder of his recreation
time.  Offenders in this part of the
prison are handcuffed when they are transported, and Appellant was handcuffed
and taken back to the cell block.  








            There
had been words between Appellant and William Cathey.  Accounts varied, but when interviewed after
the assault, Appellant said that Cathey had identified him as a member of the
Mexican Mafia, a prison gang.  Because he
was not a member of the Mexican Mafia—Appellant was a member of the Latin Kings—this
would place Appellant in danger if the actual Mexican Mafia members learned
that he was claiming membership. 
Appellant also said that he had shared commissary items with Cathey, but
that Cathey began to threaten him when he indicated that he would not share
items any longer.  

            Appellant
was escorted back to the cell block and placed in Cathey’s cell.  The parties agree that this happened due to
the negligence of the officer on duty, but there was disagreement as to how it
occurred.  The State postulated that
Appellant had identified Cathey’s cell as his own to the inexperienced officer
escorting him back from recreation. 
Appellant testified that he was not paying attention and the officer
simply made a mistake and placed him in the wrong cell.  Appellant testified that he did not notice he
was in the wrong cell for some time because it was dark and because the cell
was arranged in a manner similar to his own cell.  

            Cathey
was brought back to his cell, handcuffed behind his back, almost an hour
later.  Cathey noticed that Appellant was
in his cell, and he alerted the guard to that fact.  The guard, who could not be located at the
time of trial, either did not pay attention to Cathey or did not believe
him.  She asked the picket officer to
open the door to the cell.  When the door
opened, Cathey began to run away. 
Appellant ran out of the cell and after Cathey.  Appellant had the motor from a box fan
wrapped in a sock in his hand.  He caught
up to Cathey and beat him with the improvised weapon.  Inmates who witnessed the assault testified
that Appellant hit Cathey in the head between six and twelve times with the
device.  One inmate testified that
Appellant turned Cathey over after the man had fallen and hit him in the face
several more times.  Cathey suffered
extensive injuries.  Specifically, his
skull was fractured in several places, one of his eyes was ruptured, and the
bones of his face and nose were broken.  

            Appellant
laid down after the assault and was returned to custody.  Cathey was taken to the infirmary.  The authorities attempted to arrange to fly
Cathey to Tyler by helicopter, but the weather was too bad to allow a
flight.  Instead, Cathey was driven by
ambulance to a hospital in Palestine.  The
personnel there attempted to treat Cathey, but the decision was made to transfer
him, again by ambulance, to a hospital in Tyler that had more
capabilities.  After Cathey arrived at
the hospital in Tyler, a tube was inserted into his throat so that he could be
connected to a mechanical ventilator. 
During this process, he aspirated some of the contents of his stomach
into his lungs.  The doctors tried to
clean the stomach contents from his lungs on two occasions.  Cathey suffered a cardiac arrest that night.  The medical staff was able to resuscitate
him, and he was moved into the intensive care unit for observation.  

            Cathey’s
condition worsened, and his family made the decision to remove him from life
support two days after his admission to the hospital.  Cathey died shortly thereafter.  The medical examiner who conducted an autopsy
concluded that Cathey died of complications from blunt trauma to the head.  Appellant presented the testimony of an
expert witness who testified that the injuries to Cathey’s head were not
sufficient to kill him.  Appellant’s
expert witness concluded that Cathey died as a result of the attempt to
intubate him.  He testified that
intubation was unnecessary and that it had been negligently performed, allowing
the aspiration of the contents of his stomach. 
Appellant’s expert witness testified that the aspiration of the stomach
contents induced a chemical pneumonia, which caused Cathey’s death.  

            Appellant
testified that he was frightened of Cathey, and that he had not intentionally
hit him but merely swung the improvised weapon to ward off the handcuffed
Cathey.  He testified that the weapon was
already fabricated when he was placed in Cathey’s cell and that he was
afraid  he would be trapped in the cell
with Cathey.  

            The
jury found Appellant guilty of murder and assessed punishment at life
imprisonment.  This appeal followed.

 

Excusal of
Jurors

            In
his first issue, Appellant complains that the trial court improperly excused
jurors for cause on its own motion.  

Applicable Law

            In a criminal case the parties, and
not the trial court, make motions to excuse jurors for cause.  Tex.
Code Crim. Proc. Ann. art. 35.16(a) (Vernon Supp. 2006); Green v.
State, 764 S.W.2d 242, 246 (Tex. Crim. App. 1989).  The trial court is charged with disqualifying
and excusing jurors who have a theft or a felony conviction, are under
indictment or legal accusation for theft or a felony, or are insane.  Tex.
Code Crim. Proc. Ann. art. 35.19 (Vernon Supp. 2006); Tex. Code Crim. Proc. Ann. art.
35.16(a)(2-4).  Furthermore, the trial
court has discretion to excuse otherwise qualified jurors upon a showing of
good cause.  Tex. Code Crim. Proc. Ann. art. 35.03 (Vernon Supp. 2006); Crutsinger
v. State, 2006 Tex. Crim. App. LEXIS 924, at *2-3 (Tex. Crim. App.
May 10, 2006) (not yet released for publication); Butler v.
State, 830 S.W.2d 125, 132 (Tex. Crim. App. 1992).

Analysis

            In
this case, the trial court excused jurors for cause on its own motion.  The reasons were proper reasons to challenge
jurors for cause—inability to consider the range of punishment or an
unwillingness to follow the law. But, as Appellant points out, trial courts may
not make challenges for cause.[1] However, this type of complaint must
be preserved before it may be considered on appeal. See Green,
764 S.W.2d at 247. In Green, the court of criminal appeals
identified a four part test to determine whether a party has preserved error
and has been harmed by the sua sponte dismissal of a juror.  Id.  That test requires that the defendant object
to the excusal of the juror, object to the assembled jury, identify the jurors
he claims were improperly excused, and exhaust his peremptory challenges and
request additional challenges.  Id.  

            Over
what took fifteen pages to record, the attorneys and the trial court worked
together to determine who should be struck or dismissed.  While the court did state that it was
striking jurors for cause, it was merely working with two experienced attorneys
to shortcut the process of excusing and removing jurors.  All of Appellant’s counsel’s requests to
challenge jurors were granted, counsel opposed none of the challenges to
jurors, and counsel affirmatively failed to object to the assembled petit
jury.  This complaint is not preserved
for our consideration.  See Cooks
v. State, 844 S.W.2d 697, 718 (Tex. Crim. App. 1992).  We overrule Appellant’s first issue.

 

Admission of
Evidence

            In
his second issue, Appellant complains that the trial court erred when it
allowed the State to impeach Appellant’s testimony with evidence that he had
been previously convicted of the offense of possession of a deadly weapon in a
penal institution.

Applicable Law

            Texas
Rule of Evidence 609 provides that a witness may be impeached by evidence that
he had previously been convicted of a felony if the trial court determines that
the probative value of admitting the evidence outweighs its prejudicial
effect.  This determination is reviewed
for an abuse of discretion. Theus v. State, 845 S.W.2d 874, 881
(Tex. Crim. App. 1992); Green v. State, 55 S.W.3d 633, 645 (Tex.
App.–Tyler 2001, pet. ref’d).  

            In
Theus, the court of criminal appeals articulated a five factor
analysis to evaluate the admission of a prior felony.  Theus, 845 S.W.2d at 880.  The five factors are 1) the impeachment value
of the prior crime, 2) the temporal proximity of the past crime relative to the
charged offense and the witness’s subsequent history, 3) the similarity between
the past crime and the offense being prosecuted, 4) the importance of the
defendant’s testimony, and 5) the importance of the credibility issue.  Id. 

Analysis

            The
State asserts that the first factor, the impeachment value, weighs in favor of
admission because crimes committed within a penal institution involve
deception, and the court in Theus recognized that offenses that
involve deception have a higher impeachment value. Id. at 881.
This assertion is made without citation to authority and is not immediately
persuasive.  We understand the argument
that it is generally not possible for an inmate to obtain a weapon without
engaging in deception and therefore the offense bears more of a deceptive cast
than it might if the crime were committed in the free world.  But it is not deceptive in the same way that
an offense of impersonating an officer or passing a forged bank note is
deceptive.  The root of the offense is
not dishonesty, and so we weigh this factor neutrally.  

            The
second factor pertains to the relationship in time between the prior conviction
and the present offense.  The prior
conviction in this case came about seven years before the trial.  It was neither perfectly fresh nor was it
ancient.  We weigh this factor neutrally.


            The
third factor is the similarity of the prior conviction and the present offense
and weighs against admission, if slightly. 
No facts about the prior conviction were admitted, but a reasonable jury
might conclude that Appellant’s prior conviction involved the use rather than
the mere possession of a deadly weapon. 
On the other hand, there is no evidence that it did, and there was no
improper suggestion that an inference should be drawn from the prior conviction
about Appellant’s propensity for violence. 
There is a tension because the present case involves a deadly weapon and
Appellant has been previously convicted of possession of a deadly weapon.  The trial court recognized this and included
it in its weighing of the factors.

            The
fifth and sixth factors, the importance of Appellant’s testimony and the
importance of his credibility, weigh in favor of admission. Appellant’s
testimony was very important as was his credibility. It is true, as Appellant
suggests, that some parts of his testimony were corroborated. Specifically,
other inmates testified as to difficulties between Appellant and Cathey.  But Appellant was the only person who
testified that Cathey had threatened him and tried to kick open the barrier
between their respective recreation rooms immediately before the assault.
Furthermore, Appellant was the only source of evidence for the proposition that
he feared Cathey would assault him or that he had merely sought to ward off
Cathey and not deliver devastating blows to his head.  Appellant’s testimony, if believed, could
have resulted in his acquittal.  No other
evidence established his self defense claim or his claimed lack of intent.[2]

            Therefore,
Appellant’s testimony and his credibility were very important and so these
factors weigh in favor of admission.

            Essentially
the balance in this issue was between the possibility of an improper inference
being drawn from Appellant’s previous felony conviction for possessing a deadly
weapon in prison and the importance of Appellant’s credibility.  Because the defense relied on facts and
statements of intent that were not addressed by other evidence, Appellant’s
testimony and his credibility were very important.  Therefore, the trial court’s decision to
allow Appellant to be impeached with evidence of his prior felony conviction is
not outside a zone of reasonable disagreement.  See Theus, 845 S.W.2d
at 881.  We overrule Appellant’s second
issue.

 

Notice of
Expert Testimony

            In
his third issue, Appellant complains that the State failed to give appropriate
notice of anticipated expert witnesses and that the trial court should have
excluded the testimony of four of the State’s witnesses. 

Analysis 

            A
portion of this complaint is waived. 
Appellant complains that witness Bill Jones testified that the fan motor
used to assault Cathey was a deadly weapon. 
Jones was an investigator with the 
prison system.  This might be
expert testimony, but Appellant did not object to the testimony when it was
offered.  Appellant raised the issue
prior to trial, but the trial court indicated that it would not rule until the
issue was before it.  Appellant did not
object to Jones’s testimony, or to the trial court’s decision to defer a ruling
until the evidence was offered, and has waived this complaint.  See Tex.
R. App. P. 33.1(a)(1)(A), (a)(2)(B); Martinez v. State, 22
S.W.3d 504, 507 (Tex. Crim. App. 2000). 
Similarly, Appellant did not object to the expert testimony offered by
Drs. Veasey and Villereal.  This waives
Appellant’s complaint about their testimony. 
Id.

            Appellant
did object to expert testimony from Eddie Baker, an assistant warden.  On appeal, Appellant asserts that article
39.14(b) of the Texas Code of Criminal Procedure requires the State to
disclose, prior to trial, the name and address of any expert witness it intends
to call.  But, as the State points out,
the statute is not self–executing. 
Rather, article 39.14(b) allows the trial court to require the State to
list their expert witnesses upon request. 
The record does not show that the court ever ordered disclosure, and Appellant
does not direct us to any place in the record where such an order was
made.  

            In
a pleading filed immediately before trial, however, Appellant said that the
trial court had entered such a discovery order in a previous cause number in
which this matter had been indicted. 
This does not mean that the requirement carried over to the instant
case.  In fact, that Appellant could only
cite an order from a previously filed and presumably dismissed case suggests
that there was not such an order in this case. 
Without such an order, the complaint would not be preserved.  See, e.g., Gorom v. State,
No. 13-03-249-CR, 2005 Tex. App. LEXIS 3007, at *7 (Tex. App.–Corpus Christi
2005, no pet.) (not designated for publication) (holding that article 39.14(b)
had no application when the trial court did not order disclosure.).

            Even
if the court had ordered the State to disclose its expert witnesses, we
perceive no reversible error.  First,
Appellant sought the wrong remedy.  The
appropriate remedy for a discovery violation is to request a continuance.  Duff-Smith v. State, 685 S.W.2d
26, 33 (Tex. Crim. App. 1985).  This was
not done.  

            Second,
there was notice that Baker was an expert witness.  Appellant complains that because the State
designated every witness as a potential expert witness, he may have had actual
notice of an expert witness but not realistic notice because of the number of
witnesses.  This argument fails with
respect to Baker in particular. 
Appellant should have reasonably anticipated that an assistant warden
who observed both the weapon and the victim shortly after the assault would
testify that the fan motor was a deadly weapon. 


            Third,
the matter to which Baker testified, that the fan motor in a sock was a deadly
weapon, is not the kind of expert testimony, assuming it is expert testimony at
all, for which Appellant had need of exceptional formal notice.  The weapon was admitted into evidence and
another witness testified that it was a deadly weapon.  The weapon was used to hit Cathey in the head
and face and fractured his skull in at least two places.  The theory that the fan motor was a deadly
weapon was not a novel argument nor was it unexpected.  Indeed, the State alleged it in the
indictment.  

            Appellant
was not without actual notice that Baker would be an expert witness because he
was designated as a potential expert witness in the pretrial pleadings.  Appellant was not without realistic notice,
assuming such a claim is cognizable, because he could have reasonably
anticipated that a correctional professional would testify that, as alleged in
the indictment, the fan motor was a deadly weapon.  

            Even
if Baker had not been disclosed at all, we would review the decision to allow
him to testify in terms of whether the prosecutor acted in bad faith and
whether Appellant could have reasonably anticipated the testimony.  Martinez v. State, 867 S.W.2d
30, 39 (Tex. Crim. App. 1993).  This
testimony could have reasonably been anticipated, and the State did not act in
bad faith when it listed all of its witnesses, including Baker, as possible
expert witnesses.  We overrule Appellant’s
third issue.

 

Sufficiency
of the Evidence

            In
his fourth and fifth issues, Appellant complains that the evidence was
insufficient to show that he caused Cathey’s death.

Standards of Review

            The due process guarantee of the
Fourteenth Amendment requires that a criminal conviction be supported by
legally sufficient evidence.  See Jackson
v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed.
2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim.
App. 2004); Willis v. State, 192 S.W.3d 585, 592 (Tex. App.–Tyler
2006, pet. ref’d).  Evidence is not
legally sufficient if, when viewing the evidence in a light most favorable to
the verdict, no rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. 
See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see
also Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

            While
legal sufficiency review is all that is required by the U.S. Constitution, the
Texas Court of Criminal Appeals has determined that the Texas Constitution
requires further review of the factual sufficiency of the evidence.  Clewis v. State, 922 S.W.2d
126, 129-31 (Tex. Crim. App. 1996).  Our
review of the factual sufficiency of the evidence is without the light most
favorable to the verdict, and we determine whether the evidence supporting the
verdict is too weak to support the finding of guilt beyond a reasonable doubt,
or if the evidence contrary to the verdict is strong enough that the beyond a
reasonable doubt standard could not have been met.  Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004).

            Under
either standard, our role is that of appellate review, and the fact finder is
the sole judge of the weight and credibility of a witness’s testimony.  Wesbrook v. State, 29 S.W.3d 103,
111-12 (Tex. Crim. App. 2000).  The fact
finder may choose to believe all, some, or none of a witness’s testimony.  Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986).

            The
sufficiency of the evidence is measured against the offense as defined by a
hypothetically correct jury charge.  See Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997).  Such a
charge would include one that “accurately sets out the law, is authorized by
the indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant is tried.”  Id.

            To
support the conviction in this case, the State was required to prove that
Appellant caused the death of William Cathey by committing an act clearly
dangerous to human life with the intent to cause serious bodily injury to
William Cathey.  See Tex. Pen. Code Ann. § 19.02 (b)(2)
(Vernon Supp. 2006).

Analysis

            Appellant
argues that he is not criminally responsible for William Cathey’s death because
there was a concurrent cause, the alleged negligence of the hospital staff,
that caused the death.  Texas law
provides that a person is not responsible for the result of an action if a
concurrent cause was clearly sufficient to produce the result, and the actor’s
conduct was clearly insufficient to cause the result.  Tex.
Pen. Code Ann. § 6.04(a) (Vernon Supp. 2006).  

            Appellant
presented expert testimony that the fractured skull and broken facial bones
that Cathey suffered would not have caused his death, but that he died from
chemical pneumonia which was a result of his aspirating stomach contents while
he was being intubated.  This expert,
whose principal practice was in the area of obstetrics/gynecology, also
testified that there was no reason for the hospital staff to intubate Cathey at
all and that the aspiration occurred as a result of negligence. 

            The
medical examiner and treating emergency department physician testified
differently.  The medical examiner
testified that while there were food particles in Cathey’s lungs, the broken
skull and other injuries Cathey suffered at Appellant’s hands were the cause of
his death.  Furthermore, there was
testimony that the natural reflex that keeps a person from aspirating stomach
contents when he vomits is limited in people, such as Cathey, who are suffering
from a lack of consciousness caused by a brain injury.  In fact, the emergency department doctor
testified that it was Cathey’s dwindling consciousness that required intubation
to ensure that Cathey could be supplied with sufficient oxygen.

             In cases involving pneumonia contracted in the
hospital after significant injuries, the court of criminal appeals has held
that the actor who inflicted the injury will be responsible for the death in
the absence of gross neglect or improper treatment. Jones v. State,
582 S.W.2d 129, 134 (Tex. Crim. App. 1979); Turner v. State, 505
S.W.2d 558, 560 (Tex. Crim. App. 1974); see also Powell v. State,
13 Tex. Ct. App. 244, 254 (1882) (“It is an ancient and well settled principle
of the law of homicide, that, if a wound causes a disease which produces death,
the death is imputable to the wound.”).

            This
case is different from Jones because the expert testimony offered
by Appellant, if believed, suggested that the intubation was unnecessary, that
the intubation was negligently performed, and that death would not have
occurred without the subsequent chemical pneumonia.  If the death was the result of medical
malpractice and Cathey would not have died as a result of the injuries inflicted
on him by Appellant, Appellant would not be responsible for the death.  The jury’s verdict, however, was a rejection
of the testimony offered by Appellant’s expert witness.  The treating physician testified about the
reasons that intubation was necessary, and there was testimony to describe how
the aspiration could have occurred in the absence of negligence.  Finally, the medical examiner testified that
the serious wounds inflicted by Appellant were the cause of death.  

            The
jury’s conclusion that Appellant had criminal responsibility for Cathey’s death
is a reasonable conclusion between contradicting testimony offered by expert
witnesses.  A rational jury could have
concluded that Appellant caused Cathey’s death, that there was not another
cause sufficient to cause the death, or that Appellant’s conduct was clearly
the cause of Cathey’s death.  Evaluating
the evidence in a neutral light, we hold that the evidence is not too weak to
support the verdict, nor is it outweighed by contrary evidence.  We overrule Appellant’s fourth and fifth
issues.

 

Admission of
Evidence–Gang Affiliation

            In
his sixth issue, Appellant complains that the trial court erred when it allowed
evidence that Appellant was a member of a gang during the guilt/innocence phase
of the trial.  Specifically, Appellant
complains that his written statement that he was a member of a prison gang was
not relevant and that he was not provided timely notice of the intent to offer
the evidence. 

            In
fact, Appellant’s statement does not say that he was a member of a prison
gang.  Appellant’s statement was,  in relevant part, as follows:

 

I started having
problem [sic] with said individual because one [sic] he put out over the run
that I was confirmed Mexican Mafia and the M.M. who live on the wing (2–row)
could hear him.  He was saying this in
order to cause confussion [sic] between me [and] that familia.

 

 

            This
is not evidence that Appellant was a member of the “Mexican Mafia.”  It was evidence that he was not a member of
the “Mexican Mafia” and that Cathey was saying this to cause Appellant trouble.


            Furthermore,
this complaint is not preserved.  A
hearing was held outside the presence of the jury about the statement.  Appellant’s counsel did not request that the “Mexican
Mafia” language be removed from the statement, but expressed concern that the
statement would open the door to evidence about Appellant’s actual membership
in a prison gang.  The court indicated
that the statement would not open the door and asked if either party wished to
have the statement redacted.  The State indicated
that it did not, and Appellant’s counsel said, “I’m – I’m – I’m not necessarily
[asking for redaction] either, but I wanted just to point out to the court that
it gets into things in the limine, but it was in the statement.”  Shortly thereafter, the court asked Appellant’s
counsel twice more for further objections and there were none.  When the exhibit was finally offered,
Appellant’s counsel stated as follows: “Your Honor, this was made available to
the defense beforehand.  We have no
objection.”  Appellant never complained
that timely notice was not given or that the evidence was irrelevant.








            Generally,
a complaint about the introduction of evidence is not preserved for our review
unless there has been an objection at the time the evidence was admitted.  See Tex.
R. App. P.  33.1.  Furthermore, even when there is an objection
to evidence before trial, the statement that there is “no objection” when it is
introduced waives any previous objection. 
See Swain v. State, 181 S.W.3d 359, 368 (Tex. Crim. App.
2005), petition for cert. filed, (April 25, 2006) (No. 05-11514).  In this case, both types of waiver are
present.  There was never an objection to
the statement, and Appellant’s counsel affirmatively stated that she did not
object to the evidence when it was admitted. 
It appears that the trial court, in an abundance of caution, was
prepared to order the statement to be redacted. 
Appellant declined to request that the statement be redacted and may not
take the contrary position on appeal.  We
overrule Appellant’s sixth issue.

 

Admission of
Evidence–Expert Testimony Regarding Deadly Weapon

            In
his seventh issue, Appellant complains that the trial court erred when it
permitted Eddie Baker to testify that the fan motor wrapped in a sock was a
deadly weapon.  

Standard of Review

            We review a trial court’s decision to
admit or exclude scientific expert testimony under an abuse of discretion
standard. See Sexton v. State, 93 S.W.3d 96, 99 (Tex. Crim. App.
2002). The trial court ruling will be upheld if it is within the zone of
reasonable disagreement. Id. By rule, a witness may offer an
opinion if he possesses specialized knowledge, skill, experience, training, or
education related to a fact in issue. Tex.
R. Evid. 702. A lay witness may offer opinions based on his perception
when it is helpful to a clear understanding of the witness’s testimony or the
determination of a fact in issue. Tex.
R. Evid. 701. We review a trial court’s decision to allow opinion
testimony from a lay witness for an abuse of discretion. See Fairow v.
State, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997).

            A
deadly weapon is a firearm or anything manifestly designed, made, or adapted
for the purpose of inflicting death or serious bodily injury; or anything that
in the manner of its use or intended use is capable of causing death or serious
bodily injury.  Tex. Pen. Code Ann. § 1.07 (a)(17)(A) & (B) (Vernon Supp.
2006).

Analysis

            Eddie
Baker was an assistant warden at the time of trial and had been a major at the
Coffield Unit at the time of the assault. 
He arrived at the scene of the assault shortly after it occurred and
observed both the weapon and the injuries to Cathey.  Baker had been with the department of
criminal justice for more than sixteen years and had seen inmates assault
guards and other inmates with homemade or improvised weapons seventy–five times.  Baker testified that the fan motor in the
sock was a deadly weapon.

          At the outset, we should note that it
is not immediately apparent that this testimony was expert testimony.  For example, the court of criminal appeals
held in Denham v. State, 574 S.W.2d 129, 131 (Tex. Crim. App.
1978), that a lay witness who observed a knife and received a wound from it was
capable of testifying that the knife was a deadly weapon. In this case, Baker
observed the weapon and the injuries it was used to inflict. Photographs of the
injuries taken shortly after they were inflicted were admitted into evidence,
and it is not clear to us that Baker’s opinion rested on his credentials.
Assuming Baker is an expert, the test for whether his testimony should have
been allowed is whether 1) the witness qualifies as an expert by reason of his
knowledge, skill, experience, training, or education; 2) the subject matter of
the testimony is an appropriate one for expert testimony; and 3) admitting the
expert testimony will actually assist the fact finder in deciding the
case.  Alvarado v. State,
912 S.W.2d 199, 215-16 (Tex. Crim. App. 1995). 


            Baker
was qualified as an expert by virtue of his knowledge and experience in the
prison system.  He was a corrections
professional who had observed the use of improvised weapons in prisons.  He observed the weapon in this case and the
injuries inflicted with it.  His training
and experience were related to the issue at hand, specifically, weapons
improvised within the prison system.  And
his testimony was helpful to the jury as they were called upon to decide if the
fan motor was a deadly weapon.  The trial
court did not abuse its discretion when it allowed Baker to offer an opinion as
to whether the fan motor was a deadly weapon. 
See, e.g., Bernal v. State, B14-91-00044-CR,
1992 Tex. App. LEXIS 681, at *2-4 (Tex. App.–Houston [14th Dist.] 1992, no
pet.) (not designated for publication) (assistant warden was properly qualified
to testify as an expert witness that a “shank” was a deadly weapon because of
his experience in the prison system and his training.).  We overrule Appellant’s seventh issue. 

 

Unanimous
Verdict

            In
his eighth issue, Appellant complains that he was deprived of his right to a
unanimous verdict because the jury charge defined a deadly weapon in the
disjunctive and the jury may have reached its verdict without unanimous
agreement as to which definition of deadly weapon applied.  Applicable Law

            Texas
law requires a unanimous jury verdict in criminal cases.  Tex.
Const. art. V, § 13; Tex. Code
Crim. Proc. Ann. art. 36.29(a) (Vernon Supp. 2006); Ngo v. State,
175 S.W.3d 738, 745 (Tex. Crim. App. 2005). 
When the state charges different criminal acts, regardless of whether
those acts constitute violations of the same or different statutory provisions,
the jury must be instructed that it cannot return a guilty verdict unless it
unanimously agrees upon the commission of any one of the criminal acts.  Francis v. State, 36 S.W.3d
121, 125 (Tex. Crim. App. 2000).  This
requirement applies to the elements of an offense, and the jury need not agree
on all the “underlying brute facts [that] make up a particular element.”  Richardson v. United States,
526 U.S. 813, 817, 119 S. Ct. 1707, 1710, 143 L. Ed. 2d 985 (1999).

Analysis

            The
jury was instructed that a deadly weapon is anything manifestly designed, made,
or adapted for the purpose of inflicting death or serious bodily injury; or
anything that in the manner of its use or intended use is capable of causing
death or serious bodily injury.[3] 
The jury was further instructed that it could find Appellant guilty of
murder if it found that he caused Cathey’s death when he committed an act
clearly dangerous to human life by striking him with a deadly weapon, the piece
of a motor, with the intent to cause serious bodily injury.  The jury was not told that they had to agree on
at least one of the parts of the definition of a deadly weapon.  Therefore, looking at the deadly weapon
instruction alone, it is hypothetically possible that some of the jurors could
have concluded that the fan motor was manifestly designed, made, or adapted for
the purpose of inflicting death or serious bodily injury (definition subpart
1), and some of the jurors could have concluded that the fan motor was used or
intended to be used to cause death or serious bodily injury (definition subpart
2).

            This
is not a straightforward Ngo error.  A Ngo error is present when the
jury is permitted to find a defendant guilty without agreeing on the same
essential elements of the offense.  Ngo,
175 S.W.3d at 749-49.  The deadly weapon
allegation is not an essential element of the offense of murder.  See Tex.
Pen. Code Ann. § 19.02(b)(2). 
Therefore, there is no potential for a lack of jury unanimity on an
element of the offense.  Ngo,
175 S.W.3d at 747.

            To
obtain a deadly weapon finding, the State must prove beyond a reasonable doubt
that Appellant used or exhibited a deadly weapon.  Hill v. State, 913 S.W.2d 581,
583 (Tex. Crim. App. 1996).  It is not
clear that a jury must agree on which definition of deadly weapon applies in a
given case.  Our research does not reveal
a previous case in Texas dealing with this precise issue, and Appellant merely
directs us to a single unpublished decision that restates the requirement of
juror unanimity with respect to elements of an offense.  However, we need not decide the issue to
resolve this matter.  

            As
was done in this case, a deadly weapon finding can be made when the jury finds
a defendant guilty as charged and the indictment alleges the use of a deadly
weapon. See Polk v. State, 693 S.W.2d 391, 394 (Tex. Crim. App.
1985).  The jury charge permitted the
jury to find Appellant guilty only if they found that he used the deadly weapon
with the intent to cause serious bodily injury. 
Therefore, the unanimous jury finding that Appellant used the deadly
weapon with the intent to cause serious bodily injury comprehends the second
subpart of the definition of a deadly weapon. 
Said another way, an individual juror could not have found Appellant
guilty—finding that he struck Cathey with the motor with intent to cause
serious bodily injury—without finding that the intended use of the motor was to
cause serious bodily injury (subpart 2). 
The hypothetical problem of a nonunanimous decision on the issue of the
deadly weapon finding is simply not present in this case. We overrule Appellant’s
eighth issue.

 

Appellant’s
Gang Affiliation

            In
his ninth issue, Appellant complains that the trial court erred when it
permitted Lucian Castro, an employee of the prison system, to testify that
Appellant had identified himself as a member of the Latin Kings, a clique or
gang.  Specifically, Appellant complains
that his statement should not have been introduced because it was not recorded
and because he was subject to punishment by prison officials if he did not answer
their questions.  

Analysis

            Castro
testified during the punishment phase of the trial.  Before the punishment phase began, Appellant’s
counsel raised a number of objections to the proposed testimony about Appellant’s
gang membership.  First, counsel moved to
“renew the objections [] to the State’s notice of witnesses.”  Next, counsel complained that the defense had
not been provided with records relating to Appellant’s gang status in a timely
manner, and so was unprepared to cross examine the State’s witnesses.  That objection was overruled, and the trial
court asked counsel to “go ahead and state another legal – if you have another
legal objection, go ahead and state it.” 
Counsel then objected that the gang evidence was reputation or opinion
evidence and was inadmissible under Texas Rule of Evidence 405.  The trial court decided that this objection
was too speculative and instructed the parties to object at the time they
anticipated objectionable testimony was about to be offered.  The trial court reaffirmed that it was
overruling Appellant’s objection to the notice of the evidence and to “timeliness.”  

            Appellant’s
counsel renewed the objection when Castro was called as a witness.  Counsel stated, “Your Honor, I am – I would
object at this time and I renew my request for a hearing under Rule 405 to
establish whether or not any reputation or character evidence was known prior
to the date of the offense.”  That
objection was overruled and counsel asked for a running objection.  The court granted a running objection “based
on what [counsel had] said.”  Counsel
then restated the objections: “Based on my objections of my [sic] timeliness –
lack of timeliness on the notice, insufficient notice, insufficient how the
record should be prepared, and lack of hearing [] under Rule 405.”  Without further objection, Castro testified
that Appellant had identified himself as a member of the Latin King clique and
stated that Appellant had signed documents admitting as much. 

            As
a prerequisite to raising a complaint on appeal, a party must lodge an objection
before the trial court.  Tex. R. App. P. 33.1.  This requirement serves valuable purposes,
the most important being that a prompt objection provides the trial court or
the opposing party an opportunity to rectify or avoid a problem immediately.  Reyna v. State, 168 S.W.3d 173,
179 (Tex. Crim. App. 2005).  Appellant’s
counsel objected to a perceived lack of notice and the perceived improper use
of character evidence.  The present
complaint, that the statement was not recorded and was taken under legal compunction,
is waived for failure to raise it in the trial court. Tex. R. App. P. 33.1(a)(1); Mosley v. State,
983 S.W.2d 249, 265 (Tex. Crim. App. 1998). 
We overrule Appellant’s ninth issue.

 

Disposition

            We
affirm the judgment of the trial court.

 

 

 

                                                                                  BRIAN HOYLE    

                                                                                       Justice

 

 

Opinion
delivered September 6, 2006.

Panel consisted of Worthen,
C.J., Griffith, J. and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1]
One juror was struck because she was pregnant and very far along in her
pregnancy.  This would appear to be an
excuse rather than a challenge for cause. 
Appellant does not contest the release of that juror.  





[2] One of the inmates called by Appellant
testified that Cathey had a piece of glass in his hand before Appellant hit
him.  Appellant did not testify that he
saw the piece of glass and no piece of glass was recovered.





[3] Appellant did not object to the jury charge on
the ground presented here, and so we review this matter for egregious harm, if
any.  Ngo, 175 S.W.3d at
744.