Earnest MOSS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–93–077–CR.

Court of Appeals of Texas,
Waco.

June 15, 1994.

Rehearing Denied June 15, 1994.

Joe Cannon, Cannon and Simmons, Groesbeck, for appellant.

J. Keith Meredith, County & Dist. Atty., Fairfield, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION ON MOTION FOR REHEARING

THOMAS, Chief Justice.

On original submission we held that Moss failed to preserve his *Batson* complaint because his motion was not timely. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Hill v. State,* 827 S.W.2d 860, 864 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). Moss now claims in his motion for rehearing that this conclusion is erroneous. In response, the State concedes that the *Batson* challenge was timely and joins Moss in urging that we reconsider the complaint on the merits. Although we will consider the complaint on its merits, we find no error in the court's ruling and, thus, deny the request for a rehearing.

At the conclusion of voir dire, the following transpired:

THE COURT: (To the jury venire.) Okay, folks each of them have a right to strike ten names from the list. Once they do that, they'll turn it in to Mrs. Gregory, and she'll make a list. And the first 12 people who have their name down will be our jury. And so we'll ask you to take a break and be back into court at 3:00.

(Jury venire left the courtroom while the attorneys considered their jury strikes.)

(Jury venire in.)

THE COURT: We're going to ask you, as your name is called, please come forward and have a seat in the jury box.

(At this time, a jury of 12 was seated, and the remaining veniremen were excused.)

THE COURT: Okay. Folks, if you'll raise your right hands once again, please.

(At this time, the jury panel was sworn.)

THE COURT: We're going to ask you to go upstairs to the jury room. And in the interim, we need to take up a matter that you're not allowed to hear at this time. So it may be 15 or 20 minutes. But

if you want to go downstairs and get a soft drink and take it up with you, you may.

(Jury out. The Defendant returned to the courtroom.)

### BATSON VS. KENTUCKY HEARING

THE COURT: Okay. We're in the courtroom now after the jury has been seated and sworn. We have a motion filed by the defendant entitled, "Motion To Strike Entire Panel," and this appears to be a motion filed under the ruling of Batson versus Kentucky.

And is the defense ready to present its motion?

[Defense Attorney]: Yes, Your Honor.

THE COURT: You may proceed.

■ To be timely, a claim that the state has exercised its peremptory challenges in a racially discriminatory manner must be made "[a]fter the parties have delivered their [strike] lists to the clerk ... and before the court has impanelled the jury." TEX.CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989). This procedure must be followed whenever racial discrimination in the use of peremptories is raised. *Hill,* 827 S.W.2d at 863; *but see State ex rel. Curry v. Bowman,* No. 71,-606, 1993 WL 500500 (Tex.Crim.App. December 8, 1993) (holding that the trial court can fashion remedies other than provided in article 35.261). A jury is "impanelled" when the members have been seated and sworn. *Hill,* 827 S.W.2d at 864.

■ Here, Moss apparently filed his written *Batson* objection prior to the calling of the jurors' names. Thus, the *objection* was timely under article 35.261. Article 35.-261 governs the timing of the objection, but does not govern the preservation of the complaint for appellate review. Instead, the preservation requirements are controlled by Rule 52(a), which provides:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint.

TEX.R.APP.P. 52(a). "It is well-settled that the purpose of requiring a timely specific objection is to allow the trial court to have the opportunity to make a determination and ruling on the complained of point and then to proceed with the trial under the proper procedural and substantive manners, as appropriately corrected by the trial court." *Janecka v. State,* 823 S.W.2d 232, 243–44 (Tex. Crim.App.1992) (on rehearing).

Although Rule 52(a) requires objections to be timely, it does not expressly place the same requirement on the duty to obtain a ruling. However, a timely ruling is implicit in the purpose of the rule as stated in *Janecka. See id.* We believe, then, that the "timely" requirement of Rule 52(a) applies to the requirement that Moss obtain a ruling from the court. Absent a "timely" ruling, the court's "opportunity to make a determination and ruling on the complained of point and then to proceed with the trial under the proper procedural and substantive manners, as appropriately corrected" is foreclosed. *See id.* Thus, whether Moss' *Batson* complaint has been preserved depends on whether he obtained a ruling on his objection in time to satisfy the purpose of Rule 52(a) and *Janecka, i.e.,* at a time when the court could correct a problem.

Two remedies for a *Batson* violation have been approved in Texas. Article 35.261 provides that the court "shall grant the motion of a defendant for dismissal of the array [and] shall call a new array in the case," upon a finding of race-based strikes by the state. *See* TEX.CODE CRIM.PROC.ANN. art. 35.261(a), (b). This remedy is not exclusive, however, because the Court of Criminal Appeals has expressly held that "where a *Batson* claim is sustained the court may fashion a remedy in its discretion consistent with *Batson* and its progeny." *Curry,* No. 71,606 slip op. at 6. Thus, the court is authorized to disallow the state's challenge and seat the struck venireperson on the jury. *Id.* Again, though, given the broad language in *Curry,* the courts are not limited to only these two remedies,

but may fashion other remedies as the facts and circumstances of the case require.

■ The court is authorized to declare a mistrial for complaints relating to voir dire after the jury has been impaneled. *See Alvarez v. State,* 864 S.W.2d 64, 65 (Tex.Crim. App.1993). A request to dismiss the array under *Batson* is equivalent to a request for a mistrial. *Alvarez v. State,* 804 S.W.2d 617, 619 (Tex.App.—El Paso 1991), *aff'd,* 864 S.W.2d 64 (Tex.Crim.App.1993). Thus, Moss' motion to "strike" the array was equivalent to a motion for a mistrial, which the court could consider and grant after the jury was impaneled, if necessary. Moss secured a timely ruling on his objection because the court could have granted a mistrial after empaneling the jury if it had found a *Batson* violation; thus, we now hold that Moss' *Batson* complaint is preserved for our review.

The State used one of its peremptory strikes against a black venireman. In response to Moss' *Batson* objection, the prosecutor stated that he had questioned and struck the individual "because he was wearing clothing that indicated he had lived in Dallas, and that he was a young man about the age of Mr. Moss. And he was very unattentive to all the other questions [the State] asked the whole panel.... [When the State asked the panel] if anybody would feel sympathy for [Moss] ... I was specifically watching [the struck venireman] and he was not showing any sign that he was really aware or really cared about this trial.... [The State] struck him on the fact that he was from Dallas. He was from the same background as Mr. Moss, and that he was not attentive, and did not really want to participate in this trial." Thus, the State exercised a peremptory challenge on the venireman because (1) he was similar to Moss in age and "background" and (2) he was "unattentive."

■ Because we have doubts about the sufficiency of a reason based on a similar "background" in satisfying the concerns of *Batson,* we will focus on the prosecutor's statement that he struck the venireman because he was not paying attention to the voir dire proceedings. Striking a veniremember because he is inattentive is a race-neutral

reason for the strike. *See Roberson v. State,* 866 S.W.2d 259, 261 (Tex.App.—Fort Worth 1993, no pet.); *Ybarra v. State,* 775 S.W.2d 409, 410 (Tex.App.—Waco 1989, no pet.). However, several courts have held that to justify a strike based on inattentiveness the state must be able to demonstrate that fact on appeal by evidence in the record. *See Roberson,* 866 S.W.2d at 261; *Woods v. State,* 801 S.W.2d 932, 937–38 (Tex.App.— Austin 1990, pet. ref'd); *C___ E___ J___ v. State,* 788 S.W.2d 849, 857 (Tex.App.—Dallas 1990, writ denied); *Daniels v. State,* 768 S.W.2d 314, 317 (Tex.App.—Tyler 1988, pet. ref'd). Thus, under these cases, "[w]hen the State strikes a juror on a basis that cannot easily or objectively be determined by the reviewing court ... that basis must be substantiated by something other than the prosecutor's statement and that something must be on the record.... Such substantiating evidence can be an admission by opposing counsel, a finding by the trial court, or an admission by the panel member." *Roberson,* 866 S.W.2d at 261. Because we believe these courts have misapplied the burdens in the appeal of a *Batson* complaint, we respectfully decline to follow their lead. *See Walker v. State,* 859 S.W.2d 566 (Tex.App.—Waco 1993, pet. ref'd); *see also Sloan v. State,* 809 S.W.2d 224 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 112 S.Ct. 669, 116 L.Ed.2d 760 (1991) (McCormick, P.J., dissenting to dismissal of petition as improvidently granted).

■ Under *Batson,* the intent to discriminate is a "pure issue of fact, subject to review under a deferential standard." *Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991); *Vargas v. State,* 838 S.W.2d 552, 554 (Tex.Crim.App. 1992). Thus, on appeal, "[t]he overriding standard is ... whether the trial judge's decision was supported by the record so that it is not clearly erroneous." *Vargas,* 838 S.W.2d at 554. For us to conclude that the court's decision was clearly erroneous, we must be left with a "definite and firm conviction that a mistake [has] been committed." *See Hernandez,* 500 U.S. at 369, 111 S.Ct. at 1871; *Vargas,* 838 S.W.2d at 554.

As the appellate court, we view the record in the light most favorable to the court's ruling. *See Adanandus v. State,* 866 S.W.2d 210, 224 (Tex.Crim.App.1993). The record we review includes the racial makeup of the venire, the voir dire direct examination, the prosecutor's explanations and the defendant's impeaching and rebuttal evidence. *See Chambers v. State,* 866 S.W.2d 9, 23 (Tex.Crim.App.1993). Undisputed statements by the attorneys in support of their positions in a *Batson* hearing constitute "valid proof." *See Emerson v. State,* 820 S.W.2d 802, 804 (Tex.Crim.App.1991).

Applying these standards to this case, the State asserted that the struck venireman had not been paying attention to the proceedings and generally appeared disinterested in the trial. This statement constitutes proof that the venireman was, in fact, inattentive. *See id.* The defense did not challenge the prosecutor's characterization of the venireman nor did the defense attempt to cross-examine the prosecutor or put rebuttal evidence before the court; thus, there is nothing in the record which objectively contradicts the prosecutor's statement. *See Vargas,* 838 S.W.2d at 557. By overruling Moss' *Batson* objection, the court implicitly agreed with the prosecutor's characterization of the venireman. "Absent some other evidence which rebuts the State's race-neutral explanation, we will not disturb the trial court's finding that the State's explanation is legitimate...." *Chambers,* 866 S.W.2d at 25. We cannot be left with a "definite and firm conviction that a mistake [has] been committed" in the absence of any contradicting indicators. *See Hernandez,* 500 U.S. at 369, 111 S.Ct. at 1871; *Vargas,* 838 S.W.2d at 554. Thus, we cannot conclude that the trial court's decision was clearly erroneous.

We agree with the courts' statements that strikes based on claims not easily verifiable through objective proof must be viewed with "healthy skepticism." *See Woods,* 801 S.W.2d at 937; *C__ E__ J__,* 788 S.W.2d at 857; *Daniels,* 768 S.W.2d at 317. However, the "healthy skepticism" is to be exercised by the *trial court,* not by the appellate court. On appeal, the defendant bears the burden of showing error by the trial court; there is no burden on the state on appeal to convince *us* that its strikes were race neutral. The trial court is in a "unique" position to determine issues based on nonverbal factors because it has the opportunity to observe the jurors' demeanor during voir dire. *See Anderson v. State,* 758 S.W.2d 676, 681 (Tex.App.—Fort Worth 1988, pet. ref'd); *Gaines v. State,* 811 S.W.2d 245, 250 (Tex. App.—Dallas 1991, pet. ref'd). Thus, we do not agree with the conclusion reached by the courts that require special proof in the record, and decline to apply such a rule in this case.

Moss also generally requests that we reconsider our ruling on his other points of error. We have examined our opinion and conclude that our discussion and disposition of these points was correct. Thus, Moss' motion for rehearing is denied.