**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00102-CR**
_____

**LUIS ANTONIO MENENDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 09-02-01422-CR**

## MEMORANDUM OPINION

A jury found Luis Antonio Menendez guilty of capital murder. The trial court sentenced Menendez to life in prison without the possibility of parole. He appeals to this Court, and presents eleven issues he believes require a reversal of the trial court's judgment. For the reasons we explain, we disagree and therefore affirm the judgment.

THE MURDER

J.G. and P.R. agreed to give Luis Rivera, a stranger, a ride home from a restaurant. Rivera asked J.G. to stop by a bar. Later, the three men went to the trailer park where Rivera lived. Menendez was there. The four men talked and drank beer.

When J.G. and P.R. were leaving, Rivera asked them to give him a ride to a nearby store so he could purchase cigarettes. Menendez indicated he wanted to go along. J.G. drove the vehicle, and P.R. rode in the front passenger seat. Menendez sat in the backseat behind J.G., and Rivera sat behind P.R. The store was closed. Rivera and Menendez told J.G. of another store they could go to. They directed J.G. to a dark, isolated road. Menendez told J.G. to stop the vehicle. Rivera pulled a gun and demanded money. Rivera shot P.R. in the head. P.R. slumped forward. J.G. heard Menendez yell, "Now I drive[.]" J.G. escaped.

J.G. showed police the location of the shooting and the police located the vehicle. P.R. was slumped over in the front passenger seat. J.G. identified Menendez and Rivera in a photo lineup. A palm print from the vehicle confirmed Menendez had been in the vehicle. The handgun was later discovered in Menendez's wife's bedroom. The State charged that Menendez was a party to or

conspired to commit capital murder. Menendez argued at trial that he did not know that Rivera intended to rob and kill J.G. that night.

Seven days prior to the murder, Menendez and Rivera had asked another man, E.F., for a ride from the same bar. E.F. testified in this case. He explained he did not know the men, but agreed to give them a ride. Rivera and Menendez directed E.F. to a dark area where there were "lots of trees" and robbed him. Menendez got into the driver's seat and began driving, while Rivera held E.F. at gunpoint. The men told E.F. they were going to kill him. E.F. struggled with them and escaped.

## *BATSON* CHALLENGES

In his first two issues, Menendez argues the trial court committed reversible error by allowing the State, in violation of *Batson v. Kentucky*, to use peremptory challenges to exclude two veniremembers. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the Supreme Court held that the Equal Protection Clause is violated when the State excludes a veniremember on the basis of race. *See Batson*, 476 U.S. at 85-86; *see also* Tex. Code Crim. Proc. Ann. art. 35.261(a) (West 2006); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The Supreme Court outlined a three-step process for evaluating *Batson* claims: (1) the defendant must make a prima facie showing of

3

racial discrimination; (2) if the defendant makes that showing, the burden shifts to the prosecutor to articulate a race-neutral reason for the strike; and (3) the trial court must determine if the defendant has proven purposeful discrimination. *Nieto v. State*, 365 S.W.3d 673, 675-76 (Tex. Crim. App. 2012) (citing *Batson*, 476 U.S. at 97-98).

Appellant objected to the State's peremptory strikes of veniremember No.10 and veniremember No. 20 on the grounds that "the State has exercised challenges that are discriminatory in fashion against females and against minorities in violation of *Batson*[.]" The trial court gave the State the opportunity to provide a race-neutral reason for the strikes. The prosecutor responded:

> No. 10, she was yelling prejudice during the entire presentation to you and me. She seemed very disinterested. She -- basically, she was sitting there going through her fingernails and stuff like that. For that reason, I struck her.
> Number 20 I struck because she had on a Mr. T T-shirt. She also was reading a book, a crime novel book, which we took note of. And she [indicating co-counsel] noted it was a book by James Patterson, which is a "tied up in a neat, who-dun-it" type series or author, and we didn't feel that was appropriate for this sort of case.
> But I would point out for the Court that there were also several Hispanics that we did not strike . . . . And there were several African-Americans and females that are still on the panel. So those are basically my race neutral reasons that I can think of off the top of my head.

Defense counsel noted that two of the three African-Americans on the panel were "outside the strike range." The trial court found that the reasons given for the

4

strikes were sufficient to show race-neutral reasons for the exercise of peremptory strikes.

Citing *Salazar v. State*, 795 S.W.2d 187 (Tex. Crim. App. 1990), appellant argues that during the *Batson* hearing he should have been allowed to cross-examine the prosecutor. In *Salazar*, the appellant made that request, and the trial court denied it. *Salazar*, 795 S.W.2d at 192. In this case, Menendez did not request the opportunity to question the prosecutor about the stated reasons.

Menendez also claims that the race-neutral reasons provided by the State were "merely pretexts." The Court of Criminal Appeals has explained that "pretext" is "solely a question of fact; there is no issue of law." *See Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). "[A] reviewing court should examine a trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when that conclusion is, in view of the record as a whole, clearly erroneous." *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008).

The prosecutor stated that veniremember No. 10 "seemed very disinterested." A prosecutor's unchallenged statement that a veniremember was struck on the basis that the veniremember's facial expressions and body language indicated she did not wish to be a part of the proceedings may constitute a valid

5

reason to exercise a peremptory strike. *Yarborough v. State*, 947 S.W.2d 895, 899 (Tex. Crim. App. 1997); *see also Moss v. State*, 877 S.W.2d 895 (Tex. App.—Waco 1994, no pet.) (Prosecutor stated the veniremember appeared disinterested and the defense did not challenge the characterization.).

The prosecutor's strike of veniremember No. 20 was based on the type of book she was reading and on the t-shirt she was wearing. In reviewing the trial court's findings for clear error, we take into account the absence of further argument or factual development by appellant at the *Batson* hearing. *See Wamget v. State*, 67 S.W.3d 851, 853, 859 (Tex. Crim. App. 2001) (rejecting challenge where appellant failed to identify additional evidence that the State's strike was based on race and did not question the State's attorney further at trial regarding the reason); *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991); *see also Purkett v. Elem*, 514 U.S. 765, 769-70, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). After the State offered its reasons for striking No. 10 and No. 20, appellant did not argue to the trial court that the State's explanations were pretext, and did not ask to question the State's attorney. On this limited record, we cannot say the trial court's rulings were "clearly erroneous." *See Watkins*, 245 S.W.3d at 448. Issues one and two are overruled.

EXTRANEOUS OFFENSE EVIDENCE

In issues three, four, and five, Menendez contends the trial court committed reversible error by admitting unadjudicated extraneous offense evidence in violation of Texas Rules of Evidence 401, 403, and 404(b). "[T]rial courts are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A trial court's decision to admit extraneous offense evidence is reviewed for an abuse of discretion. *Saenz v. State*, 843 S.W.2d 24, 26 (Tex. Crim. App. 1992). A trial court should only be reversed for an abuse of discretion when the decision lies outside the zone of reasonable disagreement. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Tex. R. Evid. 401. Evidence of another criminal act is not admissible to prove the character of the person in order to show action in conformity therewith. *See* Tex. R. Evid. 404(b). But that same evidence may be admissible when it has relevance apart from character conformity; it may be relevant to intent, for example, or knowledge. *See id.*; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). The list of

permissible uses of evidence of "other crimes, wrongs or acts" in Rule 404(b) is not exhaustive. *See Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on reh'g).

Evidence otherwise admissible may be excluded under Rule 403 if the court determines that the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. In making this determination,

> [A] trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted.

*See Casey*, 215 S.W.3d at 880.

The State requested a hearing to determine whether the trial court would allow the State to re-open and present extraneous offense evidence of an unadjudicated aggravated robbery of E.F. by Rivera and Menendez a week earlier. The State argued that the defense opened the door to the evidence, because defense counsel (in an apparent effort to show that Menendez did not know that Rivera

8

intended to commit robbery and murder) had questioned J.G. about the fact that it was not Menendez who pulled a gun on J.G. and that it was not Menendez who was giving J.G. instructions. The trial judge stated she was inclined to allow the evidence because "through vigorous cross-examination [by the defense] intent has been raised." Defense counsel argued he had not raised the issue of intent but that intent was an issue that "arises from [the State's] lack of evidence." Defense counsel also argued that facts of the extraneous offense were different from the facts in this case, that the evidence would confuse the jury, that the evidence would tend to make the jury see Menendez as an "outlaw[,]" and that the evidence was cumulative and would cause undue delay.

Outside the jury's presence, the trial court heard E.F.'s testimony, and the trial court made a ruling allowing the evidence. Giving the jury a limiting instruction, the trial judge instructed the jurors to consider E.F.'s testimony only for the purpose of "determining motive, opportunity, intent, preparation, plan, knowledge, identity or . . . absence of mistake or accident, if any, in connection with the offense, if any," alleged against Menendez in this case.

Menendez argues the extraneous offense evidence was irrelevant because it did not "make more or less probable" an evidentiary fact that leads to an element, or "make more or less probable" defensive evidence that undermines or negates an

elemental fact. Menendez maintains that the evidence was inadmissible under Rule 404(b) because he never put on any evidence of intent, the evidence was unnecessary, and he never asserted that the events were an accident or mistake or that he was not there. He argues that if the extraneous offense evidence was admitted to prove motive, the extraneous offense evidence must explain the reason he committed the charged offense, and here there was no evidence that he knew the victim in either the charged offense or the extraneous offense. If the evidence was admitted to prove plan or scheme, he argues that there was no evidence the extraneous offense was part of a master plan. Menendez also contends the extraneous offense evidence was more prejudicial than probative under Rule 403, because it made him appear to be a criminal generally, and the prosecutor had other available evidence to establish the facts for which he was using the extraneous offense evidence. Menendez argues he was harmed because "the impact of such evidence is detrimental enough to taint the entire proceeding."

The State sought to prove that Menendez intended to participate in the robbery and murder of P.R. Approximately a week prior to this murder, Menendez committed armed robbery. With Rivera holding the gun on E.F., Menendez threatened to kill him. The circumstances were strikingly similar. The extraneous offense evidence made it more probable that Menendez knew Rivera had a gun and

was going to use it to rob and murder P.R. The evidence supported the State's theory that Menendez intended to participate in the offenses. *See Sorto v. State*, 173 S.W.3d 469, 491 (Tex. Crim. App. 2005) (Evidence of participation in murder four months earlier served to rebut argument that defendant lacked requisite intent to promote or assist in capital murder.). The challenged evidence was relevant for purposes other than character conformity. The probative value was not substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. We hold the trial court did not abuse its discretion in admitting the extraneous offense evidence over appellant's objections. Issues three, four, and five are overruled.

EXCLUSION OF EXPERT TESTIMONY

In issue six, Menendez maintains that the trial court committed reversible error by excluding Menendez's expert, Dr. Kim Arredondo. Appellant argues that the trial court should have allowed the expert to testify that Menendez has an intellectual disability that affects his "ability to plan, understand, form intent, and conspire." Menendez first offered Dr. Arredondo's testimony in support of the "Motion to Hold Texas Penal Code Section 19.03 Unconstitutional as Applied to Mentally Retarded."

Menendez's expert testified outside the presence of the jury. Arredondo, a licensed psychologist, evaluated Menendez to determine his competency and levels of functioning. She determined him to be competent. Arredondo used Green's Word Memory Test to test for malingering and the Adaptive Behavior Assessment System (2nd edition) to test his adaptive functioning. Using the Wechsler Adult Intelligence Scale (3rd edition), she tested his intelligence. Menendez scored a "68" using Spanish norms and a "65" using English American norms. Because his score was below a "70" (or a "75" if considering a standard error of measurement), Arredondo testified Menendez is mentally retarded. She explained that he does not brush his hair himself all the time, and he does not have hobbies. Although he would participate in activities, he would not be a leader or organizer. When she interviewed Menendez, he stated that he was afraid of Rivera and that Rivera was his cousin and a gang member. When asked about the prior incident of robbery and whether Menendez would know at the second incident that he was putting himself in a bad situation, she stated that he "is capable of knowing that his cousin could get into trouble at any time. But to have the wherewithal to be able to handle a situation that he would get into, as people with low cognition, they have difficulty reasoning through things and looking at the options and acting on his options." She

agreed with the statement that he may have difficulty in "connecting the dots between time A and time B."

After the trial court ruled on the extraneous offense evidence, Menendez argued that, in light of the evidence, he should be allowed to present Arredondo's testimony to show that Menendez lacks sufficient reasoning skills to "connect the dots" between the prior offense and this one, and therefore could not have known that Rivera was going to rob and kill P.R.

Before a trial court can admit expert testimony, the offering party must show that the expert is qualified, and that the testimony is reliable and relevant. *See Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). The threshold determination is whether the evidence is helpful to the trier of fact, and for the evidence to be helpful, it must be reliable. *Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994). A trial court acts as a gatekeeper in excluding unreliable evidence. *See Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).

Arredondo testified that, although Menendez is from El Salvador, she administered a version of the Wechsler Adult Intelligence Scale test applicable in Mexico. She testified that individuals from El Salvador have different cultures, backgrounds, belief systems, and dialects from those of other Spanish-speaking people. She explained that the test was normed on people in Mexico but

13

acknowledged that the language differences can be substantial even between different portions of Mexico. Arredondo testified that part of the test asks some questions about history and government that one not from Mexico may not know, but those questions would not affect Menendez because "he wasn't able to get that far in the test to be answering those questions." She noted that it is possible that other questions on the test may be easily answered by somebody from northern Mexico whereas someone from Guatemala, for example, may not know how to answer the questions. Although Arrredondo stated that the use of tests normed for other populations are accepted within her field, she admitted that there is "very limited research or anything on multicultural testing" and that no equivalent test normed on El Salvadorans exists. At the time of trial, she was the head of a task force that was trying to develop "some sort of guidelines or recommendations for forensic psychologists who do forensic bilingual assessments" to support the idea that a Spanish Wechsler test can be given to an El Salvadoran and that they can be properly normed together. Given her testimony concerning the reliability limitations of the testing she used, the trial court had discretion in exercising its gate-keeping function to exclude the testimony. Issue six is overruled.

## VENIREMEMBER NO. 38

In his seventh issue, Menendez contends the trial court committed reversible error in sua sponte dismissing veniremember No. 38. Relying on *Green v. State*, 764 S.W.2d 242, 246 (Tex. Crim. App. 1989), Menendez argues that a trial court cannot, on its own, excuse a prospective juror for cause unless the juror is disqualified from serving on the jury. But for the error to result in a reversal of the judgment, the State must have exhausted its peremptory challenges. *Id.* The State did not. Issue seven is therefore overruled.

## VENIREMEMBER NO. 17

In his eighth issue, Menendez contends the trial court committed reversible error by denying Menendez's motion to strike veniremember No. 17. Menendez asserts that No. 17's "history as a victim of violent crime[,] and the trauma she experienced being part of the legal system because she was victimized[,] biased her against Appellant[,]" and her "statements and demeanor clearly exhibited an inability to carry out any oath she would take as a juror."

A veniremember may be challenged for cause if she has a bias or prejudice against the defendant or against the law upon which either the State or the defense is entitled to rely. Tex. Code Crim. Proc. Ann. art. 35.16(a)(9), (b)(3), (c)(2) (West 2006); *Feldman v. State*, 71 S.W.3d 738, 743-45 (Tex. Crim. App. 2002). The

15

court determines whether the veniremember's personal view would substantially impair the individual's ability to carry out her oath and follow the court's instructions in accordance with the law. *Feldman*, 71 S.W.3d at 744. The proponent of a challenge for cause has the burden of establishing that the challenge is proper. *Id.* at 747. The proponent does not meet this burden until he has shown that the veniremember understood the requirements of the law and could not follow the law. *Id.*

An appellate court will overturn the trial court's ruling on a challenge for cause only if the trial court clearly abused its discretion. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011). We examine the record of voir dire and, because proper assessment of a challenge for cause requires observation of a veniremember's demeanor, we must defer to the conclusion of the trial court, particularly when a juror vacillates. *Id.*

Veniremember No. 17 did not indicate she would be unable to serve as a juror in the case. She did not indicate that she would not be impartial. She testified that she thought she could follow the law and be impartial. The trial court was in the best position to evaluate the veniremember's demeanor and responses. *See Newbury v. State*, 135 S.W.3d 22, 32 (Tex. Crim. App. 2004). We cannot say the

trial court abused its discretion in denying appellant's challenge for cause. Issue eight is overruled.

LIMITING THE TIME FOR VOIR DIRE

Menendez argues in issue nine that the trial court committed reversible error by limiting the time for voir dire. The trial court initially gave each side thirty minutes to conduct voir dire. Because of the nature of the case and the issues involved, the State requested forty-five minutes to an hour to conduct voir dire. The trial court then allowed both sides forty-five minutes and noted that if either side wanted more time he would have to request it.

When the defendant's time for conducting voir dire expired, the trial court encouraged defense counsel to "wrap it up." Defense counsel stated that he wanted to ask each juror in the strike range a question regarding whether the juror could consider probation in a murder case. The State objected on the grounds that the question was asked and answered during the State's voir dire, and that the veniremembers had "already committed to consider the full range of punishment for a first degree felony." The trial court allowed the defense to ask the first veniremember the question. After the first veniremember's response, defense counsel requested that he be allowed to ask the remaining veniremembers the same

17

question. He offered a list of seven additional questions that he wanted to ask each veniremember. The trial court explained:

> You spent a lot of time speaking to the jurors, not asking questions. And, you know, part of that is educating the jury, and I totally get that. But you-all made the decision. I told you that I was going to give you 30 minutes. I have extended it to an hour. So I am not inclined to do that. You can put that with the record.

A trial court may impose reasonable limits on voir dire: "The fact that counsel can think of one more proper question should not transform a reasonable time limit to an unreasonable one." *Whitaker v. State*, 653 S.W.2d 781, 782 (Tex. Crim. App. 1983). By showing counsel did not attempt to prolong the voir dire and counsel was prohibited from asking proper voir dire questions, an appellant may attempt to demonstrate that the court's limitation of voir dire was an abuse of discretion. *McCarter v. State*, 837 S.W.2d 117, 119 (Tex. Crim. App. 1992). Menendez argues he did not waste time or ask repetitive questions, and that he needed the answers to intelligently exercise his strikes and challenges for cause. Appellant received additional time to question the veniremembers. The trial court noted that, instead of asking questions, defense counsel chose to spend much of his time speaking to the veniremembers. Under the circumstances, we cannot conclude the trial court abused its discretion by denying appellant's request for more time. Issue nine is overruled.

18

## Legal Status Question

In his tenth issue, Menendez asserts the trial court committed reversible error by not allowing him to ask permissible commitment questions to enable strikes for cause. Defense counsel asked the first veniremember if she could consider imposing probation as a sentence under appropriate conditions if she heard evidence that the defendant was not a United States citizen. The trial court sustained the State's objection to the part of the question regarding Menendez's legal status because "we haven't heard any evidence about his status . . . [a]nd that's irrelevant."

Prior to voir dire, the trial court granted Menendez's motion in limine regarding his legal status. During voir dire, the trial court sustained the State's objection regarding the questions about Menendez's legal status. The legal-status questions were not relevant to the case. *See Smith v. State*, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985) (A question may discover a juror's view on an issue applicable to the case.). We see no abuse of discretion by the trial court in sustaining the State's objection. Issue ten is overruled.

## Lesser-Included Offense Instruction

In his last issue, Menendez contends the trial court committed reversible error by denying Menendez's request for a jury charge on the lesser-included

19

offense of robbery. The jury charge included a charge for the lesser-included offenses of murder and aggravated robbery. The parties disagree as to whether there is some evidence in the record that would have permitted the jury to convict Menendez only on robbery.

When a jury is provided an instruction for a plausible intervening lesser-included offense, but decides not to take it in favor of convicting the defendant of the charged offense, the jury would not rationally have considered an even lesser crime than the plausible intervening lesser-included offense. *See Masterson v. State*, 155 S.W.3d 167, 171-72 (Tex. Crim. App. 2005). If the jury had believed that Menendez conspired with Rivera to commit an aggravated robbery, but did not intend or have reason to anticipate Rivera would shoot anyone, aggravated robbery may have been a plausible option for the jury. The jury did not choose that option. Issue eleven does not present reversible error, and is overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on January 10, 2013
Opinion Delivered June 26, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Horton, JJ.

20