**Affirmed and Memorandum Opinion filed August 13, 2015.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-14-00159-CR

**JOHN  JOSEPH  PRIEST, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 1042290**

## M E M O R A N D U M    O P I N I O N

A jury convicted appellant John Joseph Priest of indecency with a child and assessed his punishment at fifteen years in prison.  *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011).  Appellant raises four issues on appeal.

In his first issue, appellant contends the trial court erred in failing to find purposeful discrimination in the State's use of peremptory strikes.  We hold that the trial court did not err in denying appellant's *Batson* challenge because appellant

failed to prove purposeful discrimination in the State's use of peremptory strikes. *See Batson v. Kentucky*, 476 U.S. 79 (1986). In his second issue, appellant argues that the trial court's exclusion of evidence violated his constitutional right to present a complete defense. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). We hold that appellant failed to preserve this issue for appellate review. In his third issue, appellant contends that the trial court abused its discretion when it failed to hold a hearing on his motion for new trial. We hold that because the issues raised in appellant's motion for new trial were determinable from the record, the trial court did not abuse its discretion when it denied the motion without conducting an evidentiary hearing.

In his fourth issue, appellant contends the trial court's aforementioned errors resulted in cumulative harm. Because appellant has shown no error by the trial court, there can be no cumulative error or harm. Appellant's fourth issue is overruled. We affirm the judgment of the trial court.

## BACKGROUND

Appellant was charged with indecency with a child. At the beginning of voir dire, the venire consisted of sixty-five panelists. After challenges for cause, forty veniremembers remained, three of whom were identified in the record as African-American. Using its peremptory challenges, the State struck all three African-American members, leaving no African-American member on the panel.

Following voir dire, appellant alleged that the State peremptorily struck African-American veniremembers eleven, twenty-four, and thirty-nine, thereby violating *Batson*. The prosecutor explained that she struck veniremember eleven because he did not seem "enthusiastic," and he was under the age of thirty and childless. As to member twenty-four, the prosecutor explained that she struck that juror because he was also under the age of thirty and childless, and he did not "sit

2

up straight." Lastly, as to member thirty-nine, the prosecutor explained that she struck that juror because she was "very slow in answering" and "did not fill out big portions of her jury card," which made her seem "indecisive."

Appellant did not dispute the prosecutor's characterization of the panelists' demeanor. Instead, appellant argued that the prosecutor failed to strike similarly situated veniremembers who were also under the age of thirty and childless, specifically members seventeen and thirty-five. The prosecutor responded that she had more information about veniremember seventeen than members eleven and twenty-four, and that member thirty-five was "quick in answering" compared to member thirty-nine. The trial court overruled appellant's *Batson* objections.

During the trial, appellant argued that the allegations of sexual assault were tainted by the child complainant's medical conditions and pressure from her parents. To support this theory, appellant called Dr. Carmen Petzold, a psychologist and licensed sex offender treatment provider, to testify about her opinion based on the complainant's psychiatric record. The State objected to Dr. Petzold's proposed testimony because it would invade the province of the jury to determine the truth of the complainant's allegations against appellant. To determine the admissibility of Dr. Petzold's testimony, the trial court conducted a hearing. The only issue presented at the hearing was whether Dr. Petzold should be allowed to testify as to any specifics of the complainant's psychiatric record. The trial court ruled that "[D]r. Petzold can testify as to children, in general, having false memories and what types of specifics might be indicative of false memories but the Court will limit her testimony in front of the jury as to any specifics [of the complainant]." The court explained that it was limiting Dr. Petzold's testimony because that testimony would be based on psychiatric evaluations of the complainant that were prepared by third parties who did not testify in court,

3

specifically the child's therapist and her school staff. The court also noted that there is a double-hearsay problem because the evaluations were based on hearsay from the complainant's mother and teachers.

Appellant was convicted and sentenced to fifteen years in prison. Appellant then filed a motion for new trial alleging that the exclusion of Dr. Petzold's testimony and the school records violated his constitutional right to present a complete defense. The trial court signed an order denying the motion without conducting an evidentiary hearing. This appeal followed.

## ANALYSIS

I. **The trial court did not err in overruling appellant's *Batson* challenge because he failed to prove purposeful discrimination in the State's use of peremptory strikes.**

In his first issue, appellant contends the trial court clearly erred in failing to find purposeful discrimination in the State's use of peremptory strikes.

### A. Standard of review and applicable law

The Equal Protection Clause of the United States Constitution forbids counsel from exercising peremptory strikes on the basis of race. *See* U.S. Const. amend. XIV, § 1; *Batson,* 476 U.S. at 89. A defendant is entitled to assert this type of equal-protection violation regardless of whether he is of the same race as the stricken panelists. *See Powers v. Ohio*, 499 U.S. 400, 402 (1991); *Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012). The exclusion of even one juror with racial motive invalidates the jury selection process and requires a new trial. *Jones v. State*, 431 S.W.3d 149, 154 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (reversing conviction based on wrongful exclusion of one juror).

Appellate courts review a trial court's ruling on a *Batson* challenge for clear

4

error, focusing on the genuineness rather than the reasonableness of the prosecutor's explanation. *Nieto,* 365 S.W.3d at 676; *Jones,* 431 S.W.3d at 154. We will not reverse a trial court's ruling unless we are left with a firm conviction that the trial court made a mistake. *See Harris v. State,* 827 S.W.2d 949, 955 (Tex. Crim. App. 1992). The evidence offered at trial is viewed in the light most favorable to the trial court's ruling. *Williams v. State,* 804 S.W.2d 95, 101 (Tex. Crim. App. 1991).

A *Batson* challenge consists of three steps. *Nieto*, 365 S.W.3d at 675–76 (citing *Hernandez v. New York*, 500 U.S. 352, 358 (1991)); *Jones*, 431 S.W.3d at 154. First, a defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id*. Second, if the necessary showing has been made, the burden shifts to the State to articulate a race-neutral reason for striking the veniremember in question. *Id*. Third, the trial court must determine whether the defendant has proved purposeful discrimination. *Id*.

When the prosecutor has articulated race-neutral reasons for peremptory challenges and the trial court has ruled on the ultimate question of purposeful discrimination, the issue of whether the defendant has established a prima facie case is moot and not subject to appellate review. *See Flores v. State*, 33 S.W.3d 907, 925 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Malone v. State*, 919 S.W.2d 410, 412 (Tex. Crim. App. 1996)). The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *See Peetz v. State*, 180 S.W.3d 755, 758 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995)); *see also Moss v. State*, 877 S.W.2d 895, 899 (Tex. App.—Waco 1994, no pet.) ("On appeal, the defendant bears the burden of showing error by the trial court; there is no burden on the state on appeal to convince us that its strikes were

race neutral.").

**B.  Appellant failed to prove purposeful discrimination in the State's use of peremptory strikes against African-American veniremembers.**

In this case, the State explained its strikes to the trial court rather than disputing appellant's argument for a prima facie case; therefore, the first step of the *Batson* analysis is moot. *See Flores*, 33 S.W.3d at 925. Turning to the second step, we conclude that the State's explanations for striking veniremembers eleven, twenty-four, and thirty-nine are facially race neutral. The prosecutor explained that she struck these members based on factors such as their demeanor, age, lack of children, and failure to complete the jury card. Because race plays no overt role in these explanations, they are facially race neutral. *Jones*, 431 S.W.3d at 155.

In the third step, the court must evaluate the prosecutor's race-neutral explanations to determine whether those explanations are genuine or merely a pretext for purposeful discrimination. *Id.* Appellant argues that (1) the State disproportionately used its peremptory strikes to remove African-American veniremembers, and (2) the record does not support the State's reasons for striking veniremembers eleven, twenty-four, and thirty-nine. We analyze these arguments to determine whether the trial court clearly erred in failing to find that appellant carried his burden to prove purposeful discrimination in the State's use of peremptory strikes.

Viewing the record in the light most favorable to the trial court's ruling, we hold that the court did not clearly err in overruling appellant's *Batson* objections. Here, the State used three of its ten peremptory strikes to eliminate all three African-American members from the venire panel of forty members. Appellant argues that, statistically, this is a disproportionate use of peremptory strikes against

African-American members. To support his argument, appellant cites *Vargas v. State*, 859 S.W.2d 534, 534–35 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd), in which the prosecutor peremptorily struck five out of six African-American members from a panel of thirty-six members. In *Vargas*, however, a statistical analysis was not determinative of whether the State exercised its peremptory strikes in violation of *Batson*. *See id.* Instead, it was the combined weight of all relevant factors, including the prosecutor's failure to strike similarly situated veniremembers, that ultimately convinced the *Vargas* court that the prosecutor's explanations were pretextual. *See id.* at 535.[1]

Appellant also argues that a comparative analysis of the State's strikes indicates purposeful discrimination. *See Jones*, 431 S.W.3d at 155–56 (explaining that comparative analysis is used to identify disparate treatment, which exists when "the reason a prosecutor gives for striking an African-American veniremember applies just as well to a non-African-American member allowed to serve on the jury"). We disagree. After voir dire, the prosecutor, defense counsel, and the trial court engaged in the following discussion:

> DEFENSE COUNSEL: I'd like to have a Batson challenge [on veniremembers 11, 24, and 39].
>
> . . . .
>
> PROSECUTOR: So for Number 11, the State's reasons were he has no children, he is under the age of 30, and he just didn't seem like he was really into being on the jury. He just didn't seem very enthusiastic; so those are my reasons for him. And Number 24, that

---

[1] *See also Watkins v. State*, 245 S.W.3d 444, 452 (Tex. Crim. App. 2008) ("[d]isproportionate use of peremptory challenges would obviously serve to establish a prima facie case for purposeful discrimination . . . . But this factor does not alone establish that . . . the State's explanations were [pretextual]."); *Nieto*, 365 S.W.3d at 679 ("The 'more powerful' evidence of racial discrimination was demonstrated by a comparison of similarly situated [veniremembers].") (citing *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005)).

same reason, no kids, he's 26 years old . . . he just appeared to not really care about the case, didn't really sit up straight and just didn't seem very interested in the case. [Number 39] did not fill out big portions of her jury card. [F]or example, she put "not applicable" for her job. [W]hen she was asked questions during voir dire, [s]he was very slow in answering. . . . [S]he seemed indecisive.

THE COURT: Any response?

DEFENSE COUNSEL: Judge, I would say more specifically, in regards to Juror Number 24 . . . as far as they did not have any kids and they were young . . . . Number 17 [also] has no kids . . . .

PROSECUTOR: I didn't strike 17.

DEFENSE COUNSEL: Exactly. That's my point . . . . As far as to Juror Number 35, also, [he is also] 27 years old and has no children and is the same age as Number 24. [The prosecutor] did not strike 35 . . . .

THE COURT: Is there something that would distinguish them, in the State's mind, between 17 and 11?

PROSECUTOR: Yes. I have a lot of information for Number 17 . . . [t]han I do [sic] Number 24. And Number 11 and Number 39, which are basically blank boxes for me, I just don't have a lot of information from the three panel members that the Defense is Batsoning on. And that was another reason why the State struck those three, because I just did not have a lot of information from them. Again, they just didn't seem very enthusiastic and participatory during the process. . . .

THE COURT: But the challenge as to 11 and 24 is overruled. The challenge to 39, which you were getting to —

. . . .

PROSECUTOR: Okay. And then for Number 39, the reason I struck her, . . . I have no information on her. She was very terse in her responses . . . [t]he answers I did get from Number 39 were just indicative that she was indecisive, as opposed to Number 35, who did give her answers she seemed to be very quick in answering. She seemed sure in her responses. She never wavered. She didn't take

8

her time . . . .

. . . .

THE COURT:  39 is overruled.  Okay.

DEFENSE COUNSEL:  Judge, . . . in light of the Batson challenges, I believe that the Batson challenge as to all three jurors, Number 11, 25, and 39 — we request that one of those jurors be placed . . . .

THE COURT:  That request is noted but denied.

This exchange shows that the prosecutor based her strikes in part on the panelists' demeanor.  More specifically, the prosecutor asserted that veniremember eleven did not look "enthusiastic" about being a juror, member twenty-four did not "sit up straight," and member thirty-nine "was very slow in answering."  The demeanor of a potential juror, such as body language which indicates to the prosecutor that the juror does not wish to be a part of the proceedings, is a valid reason to exercise a peremptory strike.  *See Nieto*, 365 S.W.3d at 680 (citing *Yarborough v. State*, 947 S.W.2d 892, 895–96 (Tex. Crim. App. 1997)).  Furthermore, the prosecutor's statements on the record about the panelists' demeanor are taken as established when they are undisputed by opposing counsel and unquestioned by the trial judge.  *See Yarborough*, 947 S.W.2d at 895; *Emerson v. State*, 820 S.W.2d 802, 804 (Tex. Crim. App. 1991) (holding undisputed statements by attorneys in support of their positions in *Batson* hearing constitute valid proof).

Here, we take the prosecutor's description of the panelists' demeanor as established because appellant did not rebut the prosecutor's observations.  *See Yarborough*, 947 S.W.2d at 895; *Emerson*, 820 S.W.2d at 804.  Because the record contains evidence that sets apart veniremembers seven, twenty-four, and thirty-nine, namely the prosecutor's uncontested characterizations of their courtroom

9

behavior, the trial court did not clearly err in concluding that appellant failed to prove the prosecutor's reasons for striking African-American members were pretextual. *See United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir. 1988) (holding no purposeful discrimination even though similarly situated veniremember was not struck because prosecutor partially based his neutral explanations on panelist's demeanor); *Moss*, 877 S.W.2d at 899 (holding no purposeful discrimination even though similarly situated veniremember was not struck because appellant failed to challenge prosecutor's characterization of panelist's demeanor).

Moreover, the prosecutor gave other race-neutral reasons for not striking veniremembers seventeen and thirty-five, who were under the age of thirty and childless. The prosecutor explained that she did not strike other jurors with similar characteristics because she had more information about veniremember seventeen than member twenty-four, and member thirty-five was "quick in answering" compared to member thirty-nine.

Appellant does not dispute that veniremember thirty-five was "quick in answering." Instead, appellant disputes the prosecutor's explanation that she had more information on veniremember seventeen than member twenty-four because, according to appellant, they both gave similar answers during voir dire. The record reflects that there were no individualized questions for veniremember seventeen. The record also shows that the prosecutor based her explanations on the jury card information. The prosecutor said: "I have a lot of information for Number 17 . . . [t]han I do Number 24. And Number 11 and Number 39, which are basically blank boxes for me, I just don't have a lot of information from the three panel members that the Defense is *Batsoning* on."

Appellant, as the opponent of the strike, had the ultimate burden of

10

persuasion in proving racial motivation. *See Peetz*, 180 S.W.3d at 758; *see also Moss*, 877 S.W.2d at 899. Appellant did not ask for the jury cards to be made part of the record. Viewing the record in the light most favorable to the trial court's ruling, we see nothing to indicate that the prosecutor's explanation regarding the amount of information she had about each veniremember was pretextual. Because the jury cards do not appear in the appellate record, we are not left with a firm conviction that the trial court made a mistake. *See Nieto*, 365 S.W.3d at 676; *Harris*, 827 S.W.2d at 955; *Williams*, 804 S.W.2d at 101.

Having considered the entire voir dire and the parties' arguments, we conclude appellant did not demonstrate that any of the State's explanations for its strikes were a pretext for purposeful discrimination. Given the state of the record regarding the stricken veniremembers' demeanor and the prosecutor's uncontradicted statements regarding the amount of information she had about each member, the trial court did not clearly err in ruling that the State's proffered reasons for the strikes were not a pretext for racial discrimination. For these reasons, we overrule appellant's first issue.

## II. Appellant failed to preserve his constitutional challenge to the trial court's exclusion of Dr. Petzold's testimony and the complainant's records.

In his second issue, appellant argues that the trial court's exclusion of evidence violated his constitutional right to present a complete defense. *See Holmes*, 547 U.S. at 324 (explaining that right to present defense is rooted in Due Process Clause of Fourteenth Amendment and Compulsory Process and Confrontation Clauses of Sixth Amendment to the U.S. Constitution). Appellant specifically complains of the trial court's exclusion of two related items of evidence. Appellant argues that the trial court erred when it prevented him from questioning his psychologist expert, Dr. Carmen Petzold, regarding specific

11

information contained in a packet of the complainant's records from the Humble Independent School District, which included reports prepared by two psychologists. Appellant also complains about the trial court's refusal to admit the packet of records.

The improper exclusion of evidence may raise constitutional concerns: (1) when an evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a trial court erroneously excludes evidence that is vital to the case, and the exclusion precludes the defendant from presenting a defense. *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005). The Court of Criminal Appeals has noted, however, that erroneous evidentiary rulings rarely rise to the level of denying a fundamental constitutional right to present a meaningful defense. *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002). A constitutional violation occurs when the trial court's clearly erroneous ruling excludes otherwise relevant, reliable evidence that forms such a vital portion of the case as to preclude the defendant from presenting a defense. *Id.*

To preserve a complaint for appellate review, the record must show that the complaint was presented to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). "Under this rule, an objection must be both timely and specific, alerting the trial court to any and every legal basis upon which the appellant should desire to predicate a claim later on appeal." *Leza v. State*, 351 S.W.3d 344, 361 n. 67 (Tex. Crim. App. 2011). To complain about the exclusion of certain evidence on appeal, therefore, an appellant must demonstrate that he preserved his argument by offering the evidence during trial, and by making the trial court aware of the substance of the evidence and the basis

for its admission. *See* Tex. R. App. P. 33.1; Tex. R. Evid. 103(a)(2); *Leza*, 351 S.W.3d at 360–61. Even constitutional errors may be waived by failing to timely complain in the trial court. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Wright v. State*, 374 S.W.3d 564, 575–76 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

In the trial court, appellant argued that the allegations of sexual assault were tainted by the complainant's medical conditions and pressure from her parents. To support this defense theory, appellant called Dr. Petzold to testify about her opinion based, at least in part, on the complainant's Humble Independent School District records. Appellant also sought to admit the actual records into evidence. The State lodged a hearsay objection to the records. The State objected to Dr. Petzold's proposed testimony on the basis that it would invade the province of the jury to determine whether the complainant was being truthful in her allegations against appellant.

The trial court conducted a *Daubert* hearing on the admissibility of Dr. Petzold's testimony. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993); *Coble v. State*, 330 S.W.3d 253, 270–80 (Tex. Crim. App. 2010) (applying *Daubert* principles to admissibility of psychiatrist's testimony addressing future dangerousness of defendant). The only issue presented at the hearing was whether Dr. Petzold should be allowed to testify as to any specifics found in the complainant's school records. The trial court held that Dr. Petzold could testify in general terms on several relevant subjects, including: children experiencing false memories, the causes of false memories, the types of things that might be indicative of false memories; proper forensic interviewing techniques for child sexual abuse victims and any irregularities she found in the recording of the complainant's forensic interview; and delayed outcries by sexual abuse victims.

The trial court prohibited Dr. Petzold from testifying about any specifics that might be related to the complainant beyond those mentioned above. The trial court, noting the existence of a double hearsay problem in the records, sustained the State's hearsay objection to the admission of the Humble Independent School District records.

The record reflects that although appellant made several arguments regarding why this evidence should be admitted, including that it was covered by exceptions to the hearsay rule, he made no argument during trial that exclusion of this evidence violated his constitutional right to present a complete defense. In other words, at trial, appellant failed to alert the trial court in any way that its evidentiary rulings would violate any of his constitutional rights. Appellant instead waited until his motion for new trial to make his argument that the trial court's exclusion of this evidence violated his constitutional right to present a defense. We conclude that appellant failed to preserve this issue for appellate review. *See Rodriguez v. State*, 368 S.W.3d 821, 826 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (where trial court excluded defensive evidence on basis of State's hearsay objection and defendant waited until appeal to raise federal constitutional claim, constitutional claim was waived). We overrule appellant's second issue.

## III.   The trial court did not abuse its discretion when it denied appellant's motion for new trial without a hearing because the motion raised no matters not determinable from the record.

In his third issue, appellant contends the trial court abused its discretion by failing to hold a hearing on his motion for new trial because he raised matters not determinable from the record that would entitle him to a new trial. *See Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). We disagree.

A defendant's right to an evidentiary hearing on a motion for new trial is not an absolute right, and we will not reverse a trial court's failure to hold a hearing unless the trial court abused its discretion. *Wallace*, 106 S.W.3d at 108. A trial court abuses its discretion in failing to hold a hearing when the motion for new trial and accompanying affidavits (1) raise matters that are not determinable from the record, and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009).

In addition to timely filing a motion with supporting affidavits that demonstrate reasonable grounds for believing that some error has occurred, a defendant must also present the motion to the trial court. *See* Tex. R. App. P. 21.6; *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). In order to present a motion for new trial, the movant must give the trial court actual notice that it has timely filed a motion for new trial and request a hearing on the motion. *See Rozell,* 176 S.W.3d at 230. Assuming without deciding that appellant met the presentment requirement when he filed his motion for new trial, we turn to the merits of appellant's third issue.

In his motion for new trial, appellant alleged that the trial court's decision to exclude the complainant's Humble Independent School District records and to prevent Dr. Petzold from testifying about the specific contents of those records violated his constitutional right to present a complete defense. As discussed in Part II above, this subject was litigated during trial. Appellant's motion for new trial and attached affidavit discuss the same evidence and offer the trial court new legal reasons why it should revisit its earlier evidentiary ruling. Even if this were a proper use of a motion for new trial, which we need not decide, we conclude that the issue raised in appellant's motion for new trial was determinable from the

15

record.  Therefore, appellant was not entitled to a hearing on his motion.  *See Lempar v. State*, 191 S.W.3d 230, 235 (Tex. App.—San Antonio 2005, pet. ref'd) (holding trial court's evidentiary ruling was determinable from the record and defendant therefore was not entitled to hearing on motion for new trial).

We hold that the trial court did not abuse its discretion when it denied appellant's motion for new trial without conducting an evidentiary hearing because the motion did not raise matters that were not determinable from the record.  *Id.*; *Wright v. State*, 178 S.W.3d 905, 929 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).  We overrule appellant's third issue.

## IV.  There was no cumulative impact of the trial court's errors that would require reversal.

In his fourth issue, appellant contends that the trial court's aforementioned errors resulted in cumulative harm.  A number of errors, even if harmless when considered separately, may be harmful in their cumulative effect.  *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *Melancon v. State*, 66 S.W.3d 375, 385 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).  Non-errors, however, may not cumulatively produce harm.  *Hughes v. State*, 24 S.W.3d 833, 844 (Tex. Crim. App. 2000).  Because appellant has shown no error by the trial court, there can be no cumulative error or harm.  Appellant's fourth issue is overruled.

## CONCLUSION

Having overruled each of appellant's four issues on appeal, we affirm the trial court's judgment.

/s/ J. Brett Busby
   Justice

Panel consists of Justices Jamison, Busby, and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).